William F. HILL and Lola E.
Hill, Plaintiffs–Appellees,

v.

The UNITED STATES, Defendant–
Appellant.

No. 91–5032.

United States Court of Appeals,
Federal Circuit.

Sept. 11, 1991.

Richard B. Robinson, Lentz, Evans &
King, P.C., Denver, Colo., argued, for plain-

tiffs-appellees. With him on the brief was Robert A. Wherry, Jr.

Calvin C. Curtis, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Ann Belanger Durney, Attys.

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

## OPINION

BENNETT, Senior Circuit Judge.

The Government appeals the United States Claims Court's judgment granting summary judgment for the taxpayers. 21 Cl.Ct. 713 (1990). The court held that for tax years 1981 and 1982, the taxpayers were entitled to include unrecovered tangible improvements in the computation of the adjusted basis of their oil and gas properties under Internal Revenue Code § 57(a)(8) for the purpose of calculating the amount of depletion which is a tax preference item subject to an alternate minimum tax. We affirm on the basis of the court's opinion which we adopt.

AFFIRMED.

## UNITED STATES CLAIMS COURT

Filed Oct. 31, 1990.

## OPINION

ANDEWELT, Judge.

In this tax action, plaintiffs, William F. and Lola E. Hill, seek tax refunds for tax years 1981 and 1982 of $30,963 and $18,733, respectively. This action is presently before the court on cross-motions for summary judgment. The dispute relates to the amount of taxes plaintiffs were required to

---

1. For years after December 31, 1982, the alternative minimum tax applicable to individuals is set forth in Sections 55 and 57 of the Code. The references herein to the Code and related Treasury Regulations are to those that applied during the tax years in issue.

2. Section 611 provides, in pertinent part:
   a) General Rule.—In the case of ... oil and gas wells ... there shall be allowed as a

---

pay under the alternative minimum tax provisions set forth in Sections 56 and 57 of the Internal Revenue Code (the Code), 26 U.S.C. §§ 56 and 57.[1] The parties agree that there are no material issues of fact in dispute and that this case turns on a legal issue—the proper interpretation of the pertinent statutes and regulations. For the reasons set forth below, plaintiffs' proposed interpretation is correct and plaintiffs' motion for summary judgment is granted.

## I.

During tax years 1981 and 1982, plaintiffs were engaged in the business of oil and gas exploration, development, and production. Pursuant to Section 611 of the Code, when calculating income tax due, an owner of oil and gas deposits is entitled to deduct from his or her income both a reasonable allowance to cover depletion and a reasonable allowance to cover depreciation of improvements.[2] The Code requires a taxpayer to calculate the depletion deduction in two ways—based on cost depletion pursuant to Section 612 and based on a fixed percentage of the income derived from the property pursuant to Section 613—and then to use the higher amount as the Section 611 depletion deduction. Treas. Reg. 1.611–1(a)(1).

Under Section 57 of the Code, the deduction taken for depletion is classified as an "item of tax preference," which is subject to an alternative minimum tax set forth in Section 56. Section 56 imposes a minimum tax on listed "items of tax preference"[3] and Section 57 lists "Depletion" as an item of tax preference. Under Section 57(a), the amount of the depletion deduction that constitutes an item of tax preference is calculated as follows:

> deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements ...; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary.

3. For tax years 1981 and 1982, Section 56 imposed a 15% tax rate on the excess of the sum of the items of tax preference listed in Section 57 over the deductions allowed in Section 56.

(8) Depletion.—With respect to each property (as defined in section 614), the excess of the deduction for depletion allowable under section 611 for the taxable year over the adjusted basis of the property at the end of the taxable year (determined without regard to the depletion deduction for the taxable year).

The dispute herein relates to the calculation of the amount of the item of tax preference under Section 57(a)(8). The parties agree that when calculating the depletion allowable under Section 611, plaintiffs properly used Section 613 percentage depletion, and that for tax years 1981 and 1982, plaintiffs were entitled to depletion deductions of $439,884 and $371,636, respectively. The parties disagree, however, as to how to calculate the "adjusted basis of the property" which, pursuant to Section 57(a)(8), is subtracted from the depletion deduction to determine the amount of the item of tax preference.

## II.

Operators of oil wells incur a variety of drilling and development costs that can be broken down into two categories. The first category is intangible costs and includes "all expenditures made by an operator for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas." Treas.Reg. 1.612–4(a). The second category, labeled in the briefs as "tangible costs," involves physical improvements to the property for the operation of the well, *e.g.*, the addition of machinery, tools, equipment, pipes, and similar items "ordinarily considered as having a salvage value." Treas.Reg. 1.612–4(c)(1).

For intangible costs, a taxpayer has the option of either expensing the costs (deducting them totally from his or her income in the year they are incurred) or charging the costs to capital. Treas.Reg. 1.612–

4(a).[4] When the intangible costs are charged to capital, depending on the nature of the costs, a taxpayer recovers the costs either through yearly depletion or depreciation deductions. Intangible costs "represented by physical property" (*i.e.*, the costs of installing physical structures) are returnable through depreciation. Treas.Reg. 1.612–4(b)(2). Intangible costs "not represented by physical property" are returnable through depletion. Treas.Reg. 1.612–4(b)(1). Examples of intangible costs not represented by physical property are "expenditures for clearing ground, draining, road making, surveying, geological work, excavation, grading, and the drilling, shooting, and cleaning of wells." *Id.*

For tangible costs, a taxpayer does not have the option to expense the costs, but instead must recover the costs over a period of years. Treas.Reg. 1.612–4(c)(1). In addition, rather than being recovered through a combination of depreciation and depletion deductions, tangible costs are recovered only through depreciation deductions. *Id.*

The parties agree that when calculating the "adjusted basis of the property" under Section 57(a)(8), a taxpayer must add to his or her basis those intangible costs not yet recovered that were properly added to capital and were recoverable through depletion. Since the "adjusted basis of the property" is subtracted from the depletion deduction to determine the amount of the tax preference, the amount of the depletion deduction that would constitute a tax preference item and hence be subject to a minimum tax would decrease as the amount of such unrecovered depletable intangible costs increases. The dispute herein involves the treatment under Section 57(a)(8) of unrecovered *tangible* costs, *i.e.*, tangible costs not yet recovered through *depreciation* deductions. Plaintiffs contend that when calculating the "adjusted basis," the unrecov-

---

**4.** The general rule in Section 263 of the Code is that a taxpayer cannot expense "[a]ny amount paid out for ... permanent improvements or betterments made to increase the value of any property." Subparagraph (c), however, carves out a partial exception for "[i]ntangible drilling and development costs in the case of oil and gas wells." The Treasury Secretary is charged with issuing appropriate regulations to implement subparagraph (c), and Treas.Reg. 1.612–4 is the result.

ered *tangible* costs should be treated in the same way as the unrecovered depletable *intangible* costs, *i.e.*, the basis of the property should be adjusted upward to account for the unrecovered costs. Defendant disagrees and contends that unrecovered *tangible* costs do not constitute an adjustment factor when determining the "adjusted basis of the property" under Section 57(a)(8).

## III.

Plaintiffs' argument that unrecovered tangible costs are a proper adjustment factor when calculating the "adjusted basis" would give the term "adjusted basis" its ordinary meaning as defined in Sections 1011 through 1016 of the Code. Treas. Reg. 1.57–1(h), which implements Section 57(a)(8), refers taxpayers to Section 1016 for determining the "adjusted basis of the property" for minimum tax purposes. Treas.Reg. 1.57–1(h) provides, in pertinent part: "(3) *Adjusted Basis.* For the determination of the adjusted basis of the property at the end of the taxable year see section 1016 and the regulations thereunder." Section 1016 of the Code, entitled "Adjustments to basis," in turn describes adjustments that should be made to the "basis" of the property.[5] Section 1016 provides, in pertinent part:

(a) General Rule.—Proper adjustment in respect of the property shall in all cases be made—

(1) for expenditures, receipts, losses, or other items, properly chargeable to capital account....

Treas.Reg. 1.1016–2, which implements Section 1016, in turn provides that costs of improvements and betterments to property that are not deductible (*i.e.*, not expensed) are expenditures properly chargeable to

the capital account and, hence, should be considered when calculating the "adjusted basis." Treas.Reg. 1.1016–2 provides, in pertinent part:

§ 1.1016–2. Items properly chargeable to capital account.

(a) The cost or other basis shall be properly adjusted for any expenditure, receipt, loss, or other item, properly chargeable to capital account, *including the cost of improvements and betterments made to the property.* No adjustment shall be made in respect of any item which, under any applicable provision of law or regulation, is treated as an item not properly chargeable to capital account but is allowable as a deduction in computing net or taxable income for the taxable year. For example, in the case of oil and gas wells no adjustment may be made in respect of any intangible drilling and development expense allowable as a deduction in computing net or taxable income.

(Emphasis added.) Defendant acknowledges that the tangible costs here in issue involve improvements and betterments to plaintiffs' oil and gas properties.[6]

Hence, relying on this statutory and regulatory scheme, plaintiffs argue that the "adjusted basis of the property" for purposes of Section 57(a)(8) is determined pursuant to Section 1016, and Section 1016 requires an upward adjustment to the basis of the property to account for the costs of unrecovered tangible improvements to the property.

## IV.

In response, defendant does not dispute that ordinarily costs associated with tangible improvements to property are added to

---

**5.** Section 1011 of the Code, entitled "Adjusted basis for determining gain or loss," in effect defines the term "adjusted basis" as the Section 1012 basis "adjusted as provided in Section 1016." Under Section 1012, the basis of the property is ordinarily "the cost of such property."

**6.** Treas.Reg. 1.611–5(b) treats the tangible goods in issue as "improvements" to an oil and gas property. It provides, in pertinent part:

(4) In the case of operating oil or gas properties, the deduction for depreciation shall be allowed for those costs of improvements such as machinery, tools, equipment, pipes, and other similar items and the costs of installation which are not treated as a deductible expense under section 263(c).

the basis of the property when calculating the adjusted basis under Section 1016. However, defendant contends that the Code, viewed as an "organic whole" (*see, Lewyt Corp. v. Commissioner,* 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955); *United States v. Skelly Oil Co.,* 394 U.S. 678, 695, 89 S.Ct. 1379, 1388–89, 22 L.Ed.2d 642 (1969) (Steward, J., dissenting)) demands a different result here. Defendant contends that the Code draws a clear line between depreciation (*see* Section 167) and depletion (*see* Sections 612 and 613) and that adjusting the basis of the property for unrecovered depreciable expenditures when calculating depletion as a tax preference item improperly crosses that line.

Clearly, the Code establishes separate rules for calculating the tax deductions available for depletable and depreciable costs, and the costs of depreciable improvements to the property are not a factor when calculating the amount of the depletion deduction for regular tax purposes under Sections 612 and 613. But the issue herein does not involve the calculation of the amount of the depletion deduction *per se.* Rather, the issue here involves the calculation of the amount of the depletion deduction that constitutes an item of tax preference and hence is subject to a minimum tax.

In drafting the minimum tax provisions, Congress had to make a policy decision as to how much of the depletion deduction should constitute an "item of tax preference" and hence be subject to recapture through the minimum tax. Congress clearly could have decided, as defendant proposes, that unrecovered tangible costs not be a part of the equation and that depletion as a tax preference item be calculated as the excess of the depletion allowance over the cost of the property adjusted exclusively for depletion and unrecovered depletable intangible costs. Admittedly, such an approach would create a symmetry of sorts because the unrecovered tangible costs are not a factor when calculating the depletion deduction in the first place.

On the other hand, it certainly is conceivable that Congress could have decided instead, as plaintiffs propose, that a smaller amount of the depletion deduction potentially be subject to the minimum tax, *i.e.,* that unrecovered tangible costs be included in the adjusted basis and thereby decrease the amount of the tax preference item. The Code provides extensive tax incentives to encourage oil and gas exploration and development. For example, allowing percentage depletion under Section 613 potentially permits a taxpayer depletion deductions that are far in excess of the amount the taxpayer originally paid for the oil and gas deposits. Plaintiffs' proposed interpretation of Section 57 would be consistent with this aim of encouraging development of oil and gas reserves. It would encourage investment in improvements to oil and gas deposits by having the minimum tax not apply to the extent the taxpayer's costs for tangible improvements to the well have not yet been recovered.

The critical focus when resolving which of these policy choices Congress made when it enacted Section 57(a)(8) must be the words of the statute and related regulations. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); *J.H. Miles & Co. v. United States,* 3 Cl.Ct. 10, 13 (1983). In Code Section 57(a)(8), Congress chose to use a technical tax term—"adjusted basis." Section 1016 describes how to calculate the adjusted basis and, as explained above, does not distinguish between treatment of unrecovered tangible costs recoverable through depreciation and unrecovered intangible costs recoverable through depletion. In effect, Section 1016 requires that the basis of property be adjusted upward to account for all unrecovered costs of improvements properly chargeable to the capital account. When interpreting Section 57(a)(8), absent a clear indication in the Code or related regulations to the contrary, the ordinary Section 1016 meaning of the term "adjusted basis" should apply.

V.

Defendant contends, in effect, that the Code and related regulations contain a

clear indication to the contrary. Defendant's argument commences with and relies primarily upon the definition of the term "property" in Section 614 of the Code.

Defendant's argument proceeds as follows. Section 57(a)(8) states that the tax preference applicable to depletion is calculated "[w]ith respect to each property (as defined in section 614)...." Section 614, in turn, provides: "For the purpose of computing the depletion allowance ... of ... wells, ... the term 'property' means each separate *interest* owned by the taxpayer in each *mineral deposit* in each separate tract or parcel of land." (Emphasis added.) [7] Treas.Reg. 1.614–1(a)(2), which implements Section 614, defines the term "interest" to mean "an economic interest in a mineral deposit" and refers to Treas.Reg. 1.611–1 paragraph (b), which in turn defines "economic interest" so as to require

the taxpayer to have made a capital investment in the mineral deposit.[8] Defendant does not dispute that plaintiffs had the required economic interest. Defendant focuses, however, on Treas.Reg. 1.611–1 paragraph (d), which defines the terms (1) "property" to mean each separate interest owned in each "mineral deposit," (2) "mineral deposit" to refer only to the "minerals in place," and (3) "mineral enterprise" to include mineral deposits, improvements, and portions of the surface of the land.[9] Defendant contends that because Treas. Reg. 1.611–1(d)(1) defines the term "property" as "minerals in place" and does not refer to improvements, Congress, in referencing the Section 614 definition of property in Section 57(a)(8), must have intended that the taxpayer exclude the cost of such improvements when calculating the "adjusted basis" of the property.

7. Section 614 provides, in pertinent part:

(a) General rule.—For the purpose of computing the depletion allowance in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land.

(b) Special rules as to operating mineral interests in oil and gas wells or geothermal deposits.—In the case of oil and gas wells or geothermal deposits—

(1) In general.—Except as otherwise provided in this subsection—

(A) all of the taxpayer's operating mineral interests in a separate tract or parcel of land shall be combined and treated as one property, and

(B) the taxpayer may not combine an operating mineral interest in one tract or parcel of land with an operating mineral interest in another tract or parcel of land.

(2) Election to treat operating mineral interests as separate properties.—If the taxpayer has more than one operating mineral interest in a single tract or parcel of land, he may elect to treat one or more of such operating mineral interests as separate properties. The taxpayer may not have more than one combination of operating mineral interests in a single tract or parcel of land.

8. § 1.611–1 Allowance of deduction for depletion.

\* \* \* \* \* \*

(b) *Economic Interest.* (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in miner-

al in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital.... A person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production.

9. Treas.Reg. 1.611–1(d) provides, in pertinent part:

(d) Definitions. As used in this part and the regulations thereunder the term:

(1) "Property" means—(i) in the case of minerals, each separate economic interest owned in each mineral deposit in each separate tract or parcel of land or an aggregation or combination of such mineral interests permitted under section 614(b), (c), (d), or (e)....

\* \* \* \* \* \*

(3) "Mineral enterprise" is the mineral deposit or deposits and improvements, if any, used in mining or in the production of oil and gas, and only so much of the surface of the land as is necessary for purposes of mineral extraction. The value of the mineral enterprise is the combined value of its component parts.

(4) "Mineral deposit" refers to minerals in place. When a mineral enterprise is acquired as a unit, the cost of any interest in the mineral deposit or deposits is that proportion of the total cost of the mineral enterprise which the value of the interest in the deposit or deposits bears to the value of the entire enterprise at the time of its acquisition.

But this conclusion does not follow from the wording of the Code and related regulations. Section 614 defines property "[f]or the purpose of computing the depletion allowance" and further establishes the rules for when a taxpayer can aggregate his or her interests in mineral deposits into a single property. By referencing the Section 614 definition of property, Section 57(a)(8) clearly envisions application of the same rules for tax preference purposes and envisions calculating the item of tax preference based on the same "property" for which the depletion deduction was calculated in the first place.

But, while Section 614 defines "property" in terms of interest in "mineral deposits" and speaks expansively about when interests in mineral deposits can be aggregated into a single property, it says nothing about what adjustments to the cost basis of *that property* are appropriate when calculating the "adjusted basis" of the property. Pursuant to Treas.Reg. 1.57–1(h), that subject is covered in Section 1016 which, as described above, enunciates the rule that "in all cases," adjustment "in respect of the property" shall be made "for expenditures ... properly chargeable to capital account."

Defendant's proposed interpretation of Section 57(a)(8) blurs the distinction between property and improvements to property. Section 1016 calls for adjusting the basis of the property to account for qualifying unrecovered costs of improvements. There is no requirement therein that the expenditures and related improvements be the property *per se* in order to have their cost factored in when calculating the "adjusted basis." Stated in another way, it is not material under Section 1016 that the tangible improvements herein are not "mineral deposits" or "minerals in place." An adjustment to the basis under Section 1016 is appropriate so long as the tangible costs involve qualifying improvements to the property, *i.e.*, improvements to the mineral deposits.

Moreover, defendant's contention to the effect that the only item to be considered when calculating the "adjusted basis" is the "minerals in place" is inconsistent with the undisputed way in which the regulations treat intangible costs. As explained above, defendant acknowledges that unrecovered depletable intangible costs "not represented by physical property" are properly added to the basis when calculating the adjusted basis for Section 57(a)(8) purposes. But the subject matter of such unrecovered depletable intangible costs fits no more within the Section 614 definition of "property" than does the subject matter of unrecovered depreciable tangible costs. More specifically, clearing ground, drilling, shooting, and clearing wells, which involve depletable intangible costs, are no more "mineral deposits" than pumps or pipes, which involve depreciable tangible costs. The definition in Section 614 of "property" is therefore only the starting point in calculating the "adjusted basis of the property." Once the property is defined consistent with Section 614, Treas.Reg. 1.57–1(h) requires that the taxpayer resort to the rules in Section 1016 and related regulations to calculate the "adjusted basis" thereof.[10]

**10.** At oral argument, defendant characterized the legislative history of Sections 56 and 57 as "not all that helpful." The court agrees. There are brief statements that arguably benefit each side, but nothing definitive. One statement that arguably aids defendant is a description of depletion as a tax preference item in a Senate Committee Report. S.Rep. No. 91–552, 91st Cong., 1st Sess. 114, 115 (1969–3 Cum.Bull. 423, 497), U.S.Code Cong. & Admin.News 1969, pp. 1645, 2027, 2146. The Report, issued by the Committee on Finance, comments on a bill (H.R. 13270, 91st Cong., 1st Sess. (1969)) that, after subsequent amendment by a House–Senate Conference Committee, was enacted as Sections 56 and 57. Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487. In pertinent part, the Senate version established an item of tax preference for oil and gas properties that was calculated by combining two distinct amounts set forth in subparagraphs (A) and (B), respectively. The first amount, set forth in subparagraph (A), was the total amount of intangible drilling and development costs that were expensed by the taxpayer for the tax year. The description of the second amount, set forth in subparagraph (B), involved the depletion deduction and employed the term "adjusted basis." It provided:

(B) the excess of the deduction for depletion allowable under section 611 for the taxable year over the amount which the adjusted basis of the property would have been at the end of the taxable year (determined without

## VI.

Defendant contends that including tangible costs in the adjusted basis would allow plaintiffs a double deduction of those costs from income and that interpretations of the Code resulting in double deductions are not favored. *See Charles Ilfeld Co. v. Hernandez,* 292 U.S. 62, 68, 54 S.Ct. 596, 598–99, 78 L.Ed. 1127 (1934); *Missouri & Pacific Corp. v. United States,* 5 Cl.Ct. 296, 302 (1984). Clearly, under plaintiffs' approach, the tangible costs would be considered in two different income tax calculations—first, when calculating the adjusted basis of the oil and gas property under Section 57(a)(8) and, second, when the tangible costs are recovered in a later year through a depreciation deduction. But this would not constitute a double deduction from taxable income because consideration of these costs when calculating the adjusted basis of the property does not involve a deduction from income.

Sections 56 and 57 establish a separate (alternative) tax scheme, which, through a minimum tax, effectively recaptures certain deductions allowed under the Code. Each item of tax preference in Section 57 relates to a specific deduction allowable in a separate section of the Code. This minimum tax scheme involves four steps: (1) individual items of tax preference are calculated (*i.e.,* the part of the deduction potentially subject to the minimum tax is calculated); (2) the amounts of the individual items are then added together; (3) specified deductions are allowed from that total;[11] and (4) the minimum tax rate is then applied to the remainder. (Section 56.) Thus, the first step—the calculation of the individual tax preference items—is directed at defining one part of a pool of certain tax deductions allowed under the Code, which after *subsequent* deductions is subject to the minimum tax.

With respect to Section 57(a)(8), the first step can be viewed as a determination of how much of the depletion deduction is potentially subject to the minimum tax or, in the alternative, as a determination of how much of the income originally sheltered from taxation through a depletion

---

regard to the depletion deduction for the taxable year) had the basis of the property been increased by amounts attributable to the property and treated as an item of tax preference under subparagraph (A) for any taxable year. H.R. 13270, 91st Cong., 1st Sess. 230 (1969). The Senate Report describes this proposed two-part tax preference item, in pertinent part, as follows:

(9) Depletion and intangible drilling and development costs.—This is the sum of two items: the deduction for intangible drilling and development costs ... and the excess of the depletion deduction taken for the year over *the cost of the property* reduced for depletion taken in prior years. In this case the intangible drilling and development costs, to the extent that they are treated directly as a preference item, are treated as a part of the recoverable cost in determining the depletion preference.

S.Rep. No. 91–552, 91st Cong., 1st Sess. 114, 115 (1969–3 Cum.Bull. at 497), U.S.Code Cong. & Admin.News 1969, p. 2146 (emphasis added). This description of the calculation of the adjusted basis in subparagraph (B) would be generally consistent with defendant's interpretation of Section 57(a)(8) if by "cost of the property" the Senate meant the original cost of the mineral deposits. But it is clear that Congress did not so intend from the very next sentence in the Report, which indicates that expensed intangible drilling and development costs are treated as a

part of the cost of the property. In addition, the Conference Report, when describing the item of tax preference relating to the depletion deduction, did not repeat the reference to "cost of the property." Rather, in explaining the calculation involved in Section 57(a)(8), it used the term "cost or other basis on which the depletion preference is computed." H.R.Conf.Rep. No. 91–782, 91st Cong., 1st Sess. 302 (1969–3 Cum.Bull. 644, 659) (emphasis added). Finally, as explained above, it is undisputed that Congress intended the intangible costs that were capitalized and unrecovered to be part of the adjusted basis. In this context, the reference to "cost of the property" in the Senate Report does not demonstrate any unambiguous congressional intent to exclude costs other than the purchase price of the mineral deposits when calculating the "adjusted basis" of the property.

11. Code Section 56(a) allows a taxpayer to deduct from the sum of the items of tax preference the greater of $10,000 or "the regular tax deduction." Section 56(c) defines "the regular tax deduction" as "an amount equal to one-half of ... the taxes imposed by this Chapter for the taxable year," after specified adjustments (*e.g.,* taxes under certain sections are excluded and the sum is reduced by certain tax credits). Section 56(b) allows a deferral of the minimum tax calculated in certain instances where the taxpayer has a net operating loss.

deduction will be subject to a tax. *See Mobley v. United States,* 8 Cl.Ct. 767 (1985). But under neither interpretation would the first step's calculation of the adjusted basis and the item of tax preference amount to taking a deduction from otherwise taxable income.

Indeed, defendant's double deduction theory, which treats the inclusion of tangible costs in the Section 57(a)(8) adjusted basis as involving a deduction of those costs from income, is inconsistent with the way defendant acknowledges the Code and regulations operate for other costs. There is no dispute that under the controlling statutes and regulations other costs are included in the adjusted basis (*e.g.,* the unrecovered purchase price of the minerals and the unrecovered depletable intangible costs of improvements). But, these other costs, like the tangible costs, are recoverable through deductions in later years. Therefore, consistency with defendant's double deduction theory would require that these other costs also be excluded from the adjusted basis.[12]

### VII.

There is one situation where the Treasury regulations clearly do provide that the cost of depreciable improvements are to be excluded when calculating the "basis" of oil and gas properties. That situation is when a taxpayer calculates his or her depletion deduction by using the Section 612 cost depletion rather than the Section 613 percentage depletion. Treas.Reg. 1.612–1 specifically states, however, that the required procedure involves a "special rule"—an exception to the ordinary procedures used for calculating the adjusted basis. It provides, in pertinent part:

§ 1.612–1 Basis for allowance of cost depletion.

(a) *In general.* The basis upon which the deduction for cost depletion under section 611 is to be allowed in respect of any mineral or timber property is the adjusted basis provided in section 1011 for the purpose of determining gain upon the sale or other disposition of such property except as provided in paragraph (b) of this section....

(b) *Special rules.* (1) The basis for cost depletion of mineral or timber property does not include:

(i) Amounts recoverable through depreciation deductions, through deferred expenses, and through deductions other than depletion....

Section 612 and Treas.Reg. 1.612–1 do not help defendant. First, Section 612 is not involved because plaintiffs calculated

---

12. In its briefs, defendant seeks to support its double deduction theory by citing the following statement in the Senate Committee Report (*see* n. 10, *supra*).

> As a general rule, the deductions provided under the regular individual and corporate income taxes will not be allowed for purposes of the minimum tax. This is because once the items have been deducted under the regular income tax, allowing them over again under the minimum tax would provide duplicate tax allowances. The committee's provision makes one exception to this rule with regard to net operating losses.

S.Rep. No. 91–552, 91st Cong., 1st Sess. 116, 117 (1969–3 Cum.Bull. at 423, 498), U.S.Code Cong. & Admin.News 1969, p. 2148.

But in view of the discussion above, this statement cuts against defendant. As noted, there is no dispute that the unrecovered purchase price of the mineral deposits and the unrecovered intangible depletable costs are included in the adjusted basis under Section 57(a)(8) and therefore are similarly subtracted from the depletion deduction in the first step calculation of the minimum tax scheme. If the subtraction of these costs from the amount of the deduction in the first step calculation were viewed as a deduction from income, the Senate would also have listed these costs in addition to the net operating loss as "exceptions" to the "no double deduction" comment.

In any event, this is not a situation where plaintiffs are "allow[ed] ... over again" a deduction already "deducted under the regular income tax." As noted above, the calculation of the amount of an item of tax preference does not involve any deduction from income. In addition, the tangible costs plaintiffs seek to add to the adjusted basis have never previously been deducted from income—they are being added to the basis precisely because they are unrecovered. When placed in context, it seems clear that in the quoted statement, the Senate was referring to deductions taken during the third step of the minimum tax scheme in which deductions are taken from the sum of the items of tax preference. The Senate was not referring to the first step in which items of tax preference are calculated by subtracting certain amounts from the deductions allowed under the regular income tax.

their depletion allowance using percentage depletion under Section 613, rather than cost depletion under Section 612. Second, as summarized above, while it is clearly appropriate to exclude depreciable costs when calculating the amount of the depletion deduction in the first place, the minimum tax presents a distinct policy issue that reasonably could have been resolved by Congress in a different way. Third, and most significantly, the controlling statutes and regulations contain no equivalent "special rule" for assessing the "adjusted basis" of the property under Section 57(a)(8). To the contrary, Treas.Reg. 1.57–1(h)(3) appears to mandate use of the ordinary Section 1016 procedures by stating: "For the determination of the adjusted basis of the property at the end of the year see section 1016 and the regulations thereunder."

Indeed, rather than aiding defendant's proposed interpretation of Section 57(a)(8), Section 612 would appear to favor plaintiffs' interpretation. By specifying that for Section 612 cost depletion purposes a "special rule" applies under which amounts recoverable through depreciation are excluded from the "basis" of the property, Treas. Reg. 1.612–1 would appear to acknowledge that absent such a "special rule," the basis of Section 614 property would include such amounts.

### VIII.

"Technical Advice Memoranda" (TAM) issued by the Internal Revenue Service (IRS) are not binding on the IRS. However, the approach the IRS took in TAM 8314011, issued on December 22, 1982, is instructive. That memorandum involved a calculation of the depletion item of tax preference under Section 57(a)(8) for Section 614 property. The taxpayer amended its return to include in the "adjusted basis" of the property certain intangible costs that had been capitalized rather than expensed and had not yet been recovered. The IRS approved this adjustment stating: "The term 'adjusted basis' has the same meaning whether used in section 57(a)(8), section 612, or else-

where in the Code except where the term is specifically defined differently."

A taxpayer is entitled to such consistency in definition. Where Congress and the Department of Treasury choose to employ a technical term such as "adjusted basis," a taxpayer must be given reasonable notice when the term is intended to have other than its ordinary meaning in the Code. Herein, no such notice was supplied, and plaintiffs calculated their taxes according to the ordinary meaning of the terms in the controlling statutes and the regulations. Taxpayers can be expected to do no more. Taxpayers are obliged to do no more.

### Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment is granted and defendant's cross-motion is denied. The Clerk of the Court shall enter judgment for plaintiffs in the amounts of $30,963 for tax year 1981, and $18,733 for tax year 1982, plus statutory interest thereon. Each party shall bear its own costs.

IT IS SO ORDERED.

NIES, Chief Judge, dissenting.

Congress has imposed a minimum tax on "items of tax preference" to insure that taxpayers with substantial economic income could not avoid significant tax liability by using exclusions, deductions, and credits. In general, for taxable years 1981 and 1982, the years at issue here, a minimum tax of 15 percent rate was imposed on a portion of the taxpayers' "items of tax preference." See 26 U.S.C. § 56(a) (1982).*

The particular "item of tax preference" at issue here concerns a deduction for depletion of a mineral deposit allowable under section 611. Under section 57(a)(8) of the Code, the portion of a depletion deduction that constitutes an "item of tax preference" is the excess of such deduction over the "adjusted basis of the property." The amount of depletion allowed for taxpayers' oil and gas deposits for taxable years 1981 and 1982 under section 611 is $439,884 and $371,636, respectively. The point of dis-

---

* All references are to the Internal Revenue Code, codified at Title 26 of the United States Code, applicable during 1981 and 1982, the tax years in issue.

agreement is over whether those amounts should be reduced by the unrecovered depreciated costs of certain machinery, pipes and equipment as a part of the "adjusted basis of the property." The amount of the depletion deduction subject to the alternative minimum tax as a tax preference item is then reduced to $233,339 and $240,420 in 1981 and 1982, respectively.

Cost is the starting point for determining the "basis" of property. *See* 26 U.S.C. § 1012. Section 1016 then sets out what adjustments can be made to the cost and provides that "[p]roper adjustment in respect of the property shall in all cases be made—(1) for expenditures * * * properly chargeable to capital account." I disagree with the majority that this provision permits the costs of machinery and the like to be added as an "adjustment" to the "basis" of a mineral deposit so as to reduce the amount of a tax preference item for minimum tax purposes. The reason for my conclusion is the reference in section 57(a)(8) to section 614 for the definition of "property." Section 614(a) states that "the term property means each separate interest owned by the taxpayer *in each mineral deposit . . . .*" (Emphasis added.) Giving that definition to the term "property" where it appears in sections 57(a)(8) and 1016 means one must determine the adjusted basis of the mineral *deposit.*

A mineral *deposit* has a special meaning. As explained in the regulations, a mineral deposit may be part of a mineral *enterprise.* A mineral *enterprise* is defined in section 1.611–1(d)(3) as "the mineral deposit or deposits and improvements, if any, used in mining or in the production of oil and gas and only so much of the surface land as is necessary for purposes of mineral extraction." The distinction between a mineral deposit and a mineral enterprise must be made because only the mineral deposit itself is subject to a depletion allowance under section 611. In order to obtain that tax benefit, the taxpayer must maintain a separate capital account for the mineral deposit. *See* Treas.Reg. § 1.611–2(b)(1) (1982). The capital account of the mineral deposit on which depletion is calculated includes the cost of the deposit itself and certain exploration costs and other spe-

cific adjustments. It does not include the cost of improvements used in production, such as machinery and pipes. The latter are adjustments only to the enterprise. There is no disagreement here over what items enter into calculation of the basis of the property for purposes of the depletion allowance. However, when it comes to determining how much of the basis of the property has not been depleted, the majority allows an additional item to be added. Costs which are part of the capital account of the enterprise, per the majority, may be transferred over to the mineral deposit so as to reduce the minimum tax.

I see no reason, in logic or in the statute and regulations, why costs of capital improvements, which have nothing to do with the calculation of depletion under section 611 of the Code, should be added to the adjusted basis of the oil and gas deposits for purposes of reducing the alternative minimum tax. I agree with the government's analysis that inasmuch as only the deposits themselves are the "property" depletable under section 611, it is solely the adjusted basis of that "property" which must be deducted from the depletion allowance to arrive at the excess of depletion subject to the minimum tax. Section 57(a)(8) clearly envisions application of the same rules for tax preference purposes and calculation of tax preference items based on the same "property" for which the depletion deduction was calculated in the first place. The Claims Court found it conceivable that Congress could have decided that it would decrease the amount of the tax preference item by the amount of unrecovered depreciable property costs so as to encourage investments and improvements to oil and gas deposits by having the minimum tax not apply to the extent the taxpayers' costs for tangible improvements to the well have not yet been recovered. The trial judge concluded the statutory provisions result in that policy choice. I disagree. It appears to me that a straight forward as well as logical reading of the statute indicates its rejection.