**BUCKEYE POWER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–145T.**

United States Court of Federal Claims.

July 8, 1997.

William R. Stewart, Cleveland, OH, for plaintiff. Thomas J. Callahan, David J. Hooker, and Robert P. Mone, Thompson Hine & Florry, P.L.L., of counsel.

W.C. Rapp, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant. David Gustafson, Assistant Chief, Court of Federal Claims Section, Tax Division, of counsel.

## ORDER

MILLER, Judge.

On June 13, 1997, defendant filed a motion to revise the court's opinion on the parties' cross-motions for summary judgment. Defendant requests that the court delete all references to a Technical Advice Memorandum, contending that such references violate 26 U.S.C. ("I.R.C.") § 6110(j)(3) (1994). Plaintiff counters that the court may cite TAMs for non-precedential purposes.

## FACTS

The full factual history of this case is set forth in the court's May 28, 1997 opinion. *Buckeye Power, Inc. v. United States*, 38 Fed.Cl. 154 (1997). Plaintiff, a rural electric cooperative, filed suit for refund of income tax contending that the Internal Revenue Service (the "IRS") improperly revoked its tax-exempt status. After extensive discovery the parties cross-moved for summary judgment. One of the issues before the court was whether plaintiffs practice of selling non-firm power at a discounted demand charge was economically cooperative. Defendant argued that plaintiffs pricing structure violated the cooperative economic model because plaintiff was not attempting to recover the cost of generating non-firm power. According to defendant, plaintiff sold non-firm power at a discount in order to defray costs of generating firm power. Plaintiff countered that it discounted the demand charge for non-firm power because non-firm customers did not have preferential access to plaintiffs capacity.

The court found that plaintiffs pricing structure was economically cooperative:

The court agrees with defendant that an organization that purchases more products than its members require with the intent of selling the excess in order to defray the members' fixed costs may not fall within the definition of a cooperative. However, the record does not support defendant's contention that plaintiff sold non-firm power "solely for the purpose of reducing the cost of producing on-peak electricity which is sold to Buckeye's other members." When plaintiff agreed to sell firm power to its members, plaintiff guaranteed that it would provide the members with an uninterrupted supply of power. This guarantee provided the firm power customers with preferred access to plaintiff's capacity. In return for preferred access to plaintiff's capacity, the firm power customers paid a full demand charge "which was sufficient to cover all of the fixed costs of maintaining the capacity of Cardinal Units 2 and 3." At certain times the firm power customers did not demand all of plaintiff's capacity, leaving plaintiff with excess power. Plaintiff sold the excess power to its non-firm customers with the understanding that the power would be available only after plaintiff satisfied the requirements of its firm power customers. Because plaintiff did not guarantee the non-firm power

customers an uninterrupted supply of power, plaintiff discounted their demand charge. Nothing in the record countermands a finding that plaintiff sold power on a basis inconsistent with that understanding.

*Buckeye Power*, 38 Fed.Cl. at 161 (citations omitted).

In support of its holding, the court discussed and quoted a Technical Advice Memorandum of October 24, 1996 (the "TAM"), involving similar facts and an identical legal question. The TAM concluded that "all fixed costs associated with the production and delivery of power need not be spread among all members." *See* TAM at 8. The court noted that "[w]hile the court cannot rely on the TAM as precedent, *see* I.R.C. § 6110(j)(3), the TAM provides a cohesive and logical discussion of the parameters of cooperative cost allocation, and, as plaintiff urges, shows the strength of its evidentiary position." *Buckeye Power*, 38 Fed.Cl. at 161. The court also remarked that "[i]n the absence of the TAM, the court would reach the same result. Plaintiff's briefs provide essentially the same justifications for discounting non-firm power as does the TAM." *Id.* at 161 n. 9.

## DISCUSSION

I.R.C. § 6110(j)(3) provides, in pertinent part: "Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent." "The term 'written determination' means a ruling, determination letter, or technical advice memorandum." I.R.C. § 6110(b)(1). It is defendant's position that the court's reference to the TAM violates section 6110(j)(3):

[T]he court has relied upon this private letter ruling as furnishing an example for the instant case, .... Defendant submits that it is inescapable that the Court's use

of the private letter ruling was (to use a phrase from Black's) clearly "considered as furnishing an example or authority" for reaching the decision in the instant case, and that such citation and use affords the TAM precedential status, in contravention of the express and unambiguous will of Congress.

Def's Br. filed June 13, 1997, at 2–3.

The court cannot agree with defendant's argument. The Federal Circuit has explained that TAMs, while not binding on the IRS, are "instructive." *Hill v. United States* 945 F.2d 1529, 1538 (Fed.Cir.1991), *rev'd on other grounds*, 506 U.S. 546, 113 S.Ct. 941, 122 L.Ed.2d 330 (1993); [1] *see Deluxe Corp. v. United States*, 885 F.2d 848, 853 (Fed.Cir. 1989) (finding that private letter rulings "illustrate the Treasury's administration of the statute in a manner less rigorous than that here pressed"); *Xerox Corp. v. United States*, 228 Ct.Cl. 406, 408 n. 3, 656 F.2d 659, 660 n. 3 (1981) (finding that private letter rulings are "helpful"); *see also Harco Holdings, Inc. v. United States*, 977 F.2d 1027, 1035 n. 13 (7th Cir.1992) (citing private letter ruling "as evidence of administrative practice"); *Williamson v. Commissioner*, 974 F.2d 1525, 1535 (9th Cir.1992) (holding that "Commissioner's conclusion in Technical Advice Memoranda ... reinforces our holding."); *Estate of Reddert v. United States*, 925 F.Supp. 261, 267–68 (D.N.J.1996) (explaining that TAMs and private letter rulings can serve as evidence of proper interpretation of statute); *McKnight v. Commissioner*, 58 T.C.M. (CCH) 1390, 1393 (1990) (stating that court "may, however, in the absence of authority to the contrary, accept the reasoning of a technical advice memorandum as persuasive"); *Woods Investment Co. v. Commissioner*, 85 T.C. 274, 284 n. 15, 1985 WL 15380 (1985) (noting that TAMs and private letter rulings reveal Commissioner's inter-

1. The Supreme Court, in reversing the Federal Circuit's holding, cast doubt on the propriety of the Federal Circuit's statement that TAMs are "instructive" by observing that section 6110(j)(3) would prohibit their use. However, the Supreme Court ruled that the TAM "simply is not relevant to the question presented in this case." *United States v. Hill*, 506 U.S. 546, 564 n. 12, 113 S.Ct. 941, 953 n. 12, 122 L.Ed.2d 330 (1993). The Court did not displace the substantial case

law that allows citation of private letter rulings and TAMs for non-precedential purposes. *See Rowan Cos. v. United States*, 452 U.S. 247, 261–62 n. 16, 101 S.Ct. 2288, 2296–97 n. 16, 68 L.Ed.2d 814 (1981) (noting that I.R.C. § 6110(j)(3) prohibits citation of private ruling as precedent, but quoting them to show IRS' view inconsistent with Treasury Regulation and ruling).

pretation of tax law); Jacob Mertens, Jr., *The Law of Federal Income Taxation*, § 49A.37 (1995) (explaining that TAMs "may be persuasive to the Court.")

Defendant does not agree with the reasoning of the TAM referenced by the court and requests that it be deleted from the record. Defendant presents no evidence that Congress intended I.R.C. § 6110(j)(3) to shield all non-precedential decisions from use by the outside world.[2] Instead,

> [t]he purpose for [the non-precedential status of TAM] is that if all publicly disclosed written determinations were to have precedential value, the Service would be required to subject them to considerably greater review than as provided under current procedures. Congress believed that the resulting delays in the issuance of determinations would mean that many taxpayers could not obtain timely guidance from the Service and the ruling program would suffer accordingly.

Mertens, *supra* at § 47.111 (citing General Explanation of Tax Reform Act of 1976, prepared by Staff of Joint Committee on Taxation 309).

I.R.C. § 6110(j)(3) permits the IRS to provide expeditious guidance to a single taxpayer, while preserving the opportunity to revisit its reasoning at a future time. However, the mere fact that TAMs are not binding on the IRS does not insulate the IRS from persuasive reasoning contained in prior decisions. Stated differently, strong analytical reasoning does not lose its persuasive force simply because the reasoning does not bind the IRS or constitute authority to be cited in judicial opinions. As the Supreme Court has explained, "although the petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them, such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." *Hanover Bank v. Commissioner*, 369 U.S. 672, 686, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1962) (footnote omitted).

In the case at bar, the court expressly stated that the TAM did not bind defendant. The court fully evaluated defendant's argument, but found that the uncontroverted facts did not support defendant's position. After reviewing the factual record, the court discussed and quoted the TAM to note that it reinforced plaintiff's independently viable position. The independent viability of plaintiffs position is evidenced by the fact that plaintiff only cited the TAM in its reply brief. Plaintiffs original brief, however, makes the same argument contained in the TAM. Even if plaintiff had not cited the TAM, the court would have ruled in favor of plaintiff. The Federal Circuit, the Court of Claims, and many other federal courts have sanctioned the use of TAMs for such a purpose. Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

Defendant's motion to revise the court's May 28, 1997 opinion is denied.

---

**2.** It is worth noting that defendant cites TAMs when the TAMs support its position. *See Golden Belt Telephone Assoc., Inc. v. Commissioner*, No.

21677–95, 1997 WL 325582, at *9, 108 T.C. No. 23.