VONS COMPANIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–234T.

United States Court of Federal Claims.

Nov. 6, 2001.

Paul J. Sax, Orrick, Herrington & Sutcliffe LLP, San Francisco, California, for plaintiff.

Robert J. Higgins, Court of Federal Claims Section—U.S. Department of Justice, Washington, DC, with whom were Claire Fallon, Mildred L. Seidman and Steven I. Frahm, for defendant.

## ORDER REGARDING DISCOVERY

ALLEGRA, Judge.

Owing to its interaction with more than 250 million taxpayers annually, the Internal Revenue Service (Service or IRS) has a robust administrative practice, characterized by a panoply of multi-faceted and multi-purposed administrative pronouncements and positions. Among these are Treasury regulations (both interpretative and legislative), revenue rulings, private letter rulings, technical advice memoranda and General Counsel Memoranda. A recurring issue in federal tax litigation involves the extent to which a taxpayer may rely on these IRS statements and positions in seeking either to support its case or, conversely, refute that of the Service. This issue occurs here, albeit in subsidiary form, in a discovery dispute that arose when plaintiff sought to obtain extensive admissions and numerous documents from de-

fendant concerning various rulings and memoranda prepared by the Service.

## I. Background

On April 25, 2000, the Vons Companies, Inc. (Vons or plaintiff) filed a complaint in this court, seeking a refund of federal income tax arising out of the disallowance by the IRS of deductions claimed for contributions made to multiemployer defined benefit pension plans. In particular, at issue is whether plaintiff's contributions to qualified retirement plans made after the close of its 1991 and 1992 taxable years, but before the extended due date for filing its returns for those years, were deductible in the year claimed under section 404(a)(6) of the Internal Revenue Code of 1986 (26 U.S.C.) (the Code). Vons claims that its deductions were explicitly authorized by Revenue Ruling 76–28, 1976–1 C.B. 107. Plaintiff asserts that this ruling both permits the deductions by its terms and was issued by the Service with the specific intent of demonstrating to taxpayers that such deductions were proper. It claims that the prior decisions which reject its construction of section 404(a)(6) of the Code, *American Stores Co. v. Comm'r,* 108 T.C. 178, 1997 WL 143916 (1997), *aff'd,* 170 F.3d 1267 (10th Cir.1999), *cert. denied,* 528 U.S. 875, 120 S.Ct. 182, 145 L.Ed.2d 153 (1999) and *Lucky Stores, Inc. & Subs. v. Comm'r,* 107 T.C. 1, 1996 WL 441339 (1996), *aff'd,* 153 F.3d 964 (9th Cir.1998), *cert. denied,* 523 U.S. 1111, 119 S.Ct. 1755, 143 L.Ed.2d 787 (1999), failed to give Revenue Ruling 76–28 its proper weight because the history of the application of that ruling was "largely obscured during the consideration of those cases as the result of protracted disagreement over the introduction of certain documentary evidence."

By order dated November 9, 2000, this court established a discovery plan for this case, under which discovery was to conclude June 1, 2001. Well before this date, plaintiff submitted to defendant two sets of requests for admission pursuant to RCFC 36 and one set of requests for the production of records

pursuant to RCFC 34. The defendant responded, with objections, to the first set of 114 admission requests. On February 23, 2001, it filed a motion for protective order seeking to quash plaintiff's second set of 116 admission requests. On March 5, 2001, Vons responded to the government's motion with two motions of its own—a motion to compel discovery with respect to its pending request for the production of documents and motion to determine the sufficiency of the government's responses to its first set of admissions. Various responses and replies were filed by the parties with respect to these three motions. On July 12, 2001, this court heard oral argument on the pending motions.

## II. Discussion

Plaintiff's discovery requests center on the administrative practice surrounding the promulgation and application of Revenue Ruling 76–28, *supra,* as well as the IRS application of sections 404, 412 and 413 of the Code. Its admission requests generally seek to confirm the genuineness of various IRS administrative documents and the text therein, as well as the accuracy of various legal propositions assertedly relevant to the instant case, and to divine other aspects of the IRS' understanding of the meaning of Revenue Ruling 76–28. In addition, plaintiff seeks the production of various IRS and Treasury Department files [1] relating to Revenue Ruling 76–28, as well as files relating to sixteen identified private letter rulings, technical advice memoranda and General Counsel Memoranda. Plaintiff also requests any and all other documents relating to the ongoing consideration, reconsideration, development, interpretation or application of Revenue Ruling 76–28 and the other cited IRS administrative materials.

In objecting to certain aspects of plaintiff's first set of requests for admissions and in opposing outright plaintiff's second set of admission requests and first request for documents, defendant essentially argues that plaintiff is not conducting fact discovery, but instead is attempting to bolster purely legal arguments by seeking discovery of legal mat-

---

1. For purpose of this request, a file was defined comprehensively to includes "notes, case histories, memoranda, correspondence, records and

other documents prepared or obtained in connection with the issuance or consideration of" the cited administrative documents.

ters, including the IRS' internal view of the law. It contends that much of this discovery relates to IRS administrative documents that themselves are not citable as precedent under section 6110(k)(3) of the Code, thereby rendering the requests associated with those documents irrelevant as a matter of law and thus beyond the proper scope of discovery. It also argues that release of some materials sought by plaintiff is precluded by section 6103 of the Code and that other requested materials are privileged. Finally, it asserts that plaintiff's various requests are unduly burdensome and repetitious.

The boundaries of appropriate discovery are defined in RCFC 26(b)(1), paragraph (1), which states:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The standard for deciding whether discovery should be limited is set out in RCFC 26(b)(1), paragraph 2, which provides, in pertinent part:

The frequency or extent of use of ... discovery ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery ... to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive ...

RCFC 26(c) further provides for protective orders, when justice requires, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The Federal Circuit has instructed that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir.1984). A motion for protective order to limit the scope of discovery, and, contrapuntally, a motion to compel discovery, are both committed to that discretion. *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986) (establishing abuse of discretion as the standard of review for all discovery matters); *St. Matthew Publ'g, Inc. v. United States*, 41 Fed.Cl. 142, 145 (1998). In deciding either to compel or quash discovery, this court must balance potentially conflicting goals. Thus, a " 'court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.' " *Heat & Control*, 785 F.2d at 1024 (quoting Fed.R.Civ.P. 26(b)(1), Notes of Advisory Committee on Rules 1983 Amendment). As the Supreme Court indicated in a famous case, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). On the other hand, the Court in *Hickman* cautioned that "discovery, like all matters of procedure, has ultimate and necessary boundaries .... [L]imitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* at 507–08, 67 S.Ct. 385. *See also Planning Research Corp. v. United States*, 4 Cl.Ct. 283, 296 (1983).

As presaged at the outset of this opinion, striking an appropriate balance in this case requires an understanding of the nature of tax refund cases and the role played in such litigation by IRS administrative determinations and statements, such as revenue rulings, private letter rulings, technical advice memoranda and General Counsel Memoranda. Accordingly, before turning to the merits of the pending discovery motions, the court will summarize the law on these points.

**A. Tax Refund Suits, Revenue Rulings, Private Letter Rulings, Technical Advice Memoranda and General Counsel Memoranda**

█ We begin with the axiomatic principle that tax refund cases are *de novo* proceedings. *Lewis v. Reynolds*, 284 U.S. 281, 283,

52 S.Ct. 145, 76 L.Ed. 293 (1932). Factual issues in such cases "are tried ... with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings." *Cook v. United States*, 46 Fed.Cl. 110, 113 (2000). *See also Dixon v. United States*, 381 U.S. 68, 74–75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965). As such, this court's determination of plaintiff's tax liability must be based upon the facts and merits presented to the court and does not require (or even ordinarily permit) this court to review findings or a record previously developed at the administrative level. *See R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir.1991) (factual and legal analysis employed by Commissioner not relevant in a normal refund suit); *McLeod, II v. United States*, 2000 WL 1902257 *2 (D.Nev.2000) (same). What role do revenue rulings, private letter rulings, technical advice memoranda and General Counsel Memoranda play in such a *de novo* proceeding? The court will discuss these topics each in turn.

■ A "revenue ruling" is an interpretation of the law published by the IRS in its biannual cumulative bulletin, indicating how the IRS believes the tax law should be applied to a particular set of facts. *See* Jacob Mertens, The Law of Federal Income Taxation § 1:12, 1–13 (1999). Treasury regulations indicate that the IRS intends taxpayers to rely on these rulings to the extent that the facts and circumstances concerning their situations are substantially the same as those in the ruling, but with an important proviso—the regulations emphasize that such reliance is appropriate only if the ruling has been unaffected by subsequent legislation, regulations, cases or other revenue rulings. 26 C.F.R. § 601.601(d)-(e) (2001).[2] Further caution against relying overly upon revenue rulings derives from a series of Supreme

Court decisions, spanning the last thirty (and arguably seventy) years.

Thus, in its 1965 decision in *Dixon v. United States, supra*, the Court held that the IRS is not bound by a revenue ruling containing a mistake of law and may correct such mistake by retroactively revoking the ruling, "even where a taxpayer may have relied to his detriment." *Dixon*, 381 U.S. at 72–73, 85 S.Ct. 1301. Explaining the rationale for this rule, the Court stated:

> This principle is no more a reflection of the fact that Congress, not the Commissioner prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting tax otherwise lawfully due.

*Id.* at 73, 85 S.Ct. 1301 (footnotes omitted). In so holding, the Court harkened back to its decision, forty years earlier, in *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134–35, 56 S.Ct. 397, 80 L.Ed. 528 (1936), quoting a passage therein in which it held that a regulation which "operates to create a rule out of harmony with the statute is a mere nullity." *Dixon*, 381 U.S. at 74, 85 S.Ct. 1301. The Court indicated in *Dixon* that "[t]his reasoning applies with even greater force to the Commissioner's rulings and acquiescences" and concluded that the Commissioner, therefore, was not precluded "from collecting the tax lawfully due under the statute." *Dixon*, 381 U.S. at 74–75, 85 S.Ct. 1301. *See also Automobile Club of Michigan v. Comm'r*, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).[3] More recently, in *Comm'r v. Schlei-*

---

**2.** Section 601.601(e) provides:

> (e) Taxpayers generally may rely upon Revenue Rulings published in the Bulletin in determining the tax treatment of their own transactions and need not request specific rulings applying the principles of a published Revenue Ruling to the facts of their particular cases. However, since each Revenue Ruling represents the conclusion of the Service as to the application of the law to the entire state of facts involved, taxpayers, Service personnel,

> and others concerned are cautioned against reaching the same conclusion in other cases unless the facts and circumstances are substantially the same They should consider the effect of subsequent legislation, regulations, court decisions, and revenue rulings.

**3.** Citing *Dickman v. Comm'r*, 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), plaintiff suggests that the rulings in *Dixon, Automobile Club* and *Manhattan General Equipment* are obsolete because they were based upon statements in pre–

er, 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), the Court reiterated these principles in rejecting the taxpayer's reliance upon a revenue ruling. While agreeing that the ruling was fully consistent with the taxpayer's interpretation of a Treasury Regulation, the Court, nonetheless, refused to follow it, stating that " 'the Service's interpretive rulings do not have the force and effect of regulations,' and they may not be used to overturn the plain language of a statute." *Id.* at 336 n. 8, 115 S.Ct. 2159 (citations omitted).[4]

The foregoing cases deal with situations in which taxpayer seeks to rely on a revenue ruling. But, what if the IRS seeks to use a revenue ruling in support of its argument? On this count, there is a split among the courts as to the weight that should be afforded to a revenue ruling. *See* Linda Galler, "Judicial Deference to Revenue Rulings: Reconciling Divergent Standards," 56 Ohio St. L.J. 1037, 1038 (1995). The various decisions can be arrayed over a spectrum starting with those affording such rulings the least amount of deference and ending with those affording the most. If one end of the spectrum is reserved for courts according revenue rulings little or no weight then that position is undoubtedly occupied by the Tax Court (and those circuits following its lead), which has historically held that revenue rulings merely "represent the position of one of the parties" before the court. *See, e.g., Browne v. Comm'r,* 73 T.C. 723, 731, 1980 WL 4566 (1980) (Hall, J. concurring). *See also Estate of Kosow,* 45 F.3d 1524, 1529 n. 4 (11th Cir.1995) (a revenue ruling "is merely an opinion of an IRS attorney"); *Stubbs, Overbeck & Assoc., Inc. v. United States,* 445 F.2d 1142, 1146–47 (5th Cir.1971) ("A ruling is merely the opinion of a lawyer in the agency and must be accepted as such."). More toward the middle of the spectrum lies those courts which have held that revenue rulings, while not binding, are, nonetheless, entitled to consideration as a "body of experi-

---

1953 versions of the IRS Cumulative Bulletin that, unlike the current Treasury regulations, expressly admonished taxpayers not to rely on revenue rulings. Contrariwise, *Dickman,* in fact, illustrates the continuing vitality of these earlier decisions. In that case, the Court rejected the argument that the Commissioner should not be allowed to assert the gift taxability of interest-free demand loans because his position allegedly represented a departure from prior IRS practice, stating:

Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain, it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. *E.g., Dixon v. United States,* 381 U.S. 68, 72–75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Automobile Club of Michigan v. Comm'r,* 353 U.S. 180, 183–184, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957). This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior position. *Dixon v. United States, supra,* at 73, 85 S.Ct. 1301.... Accordingly, petitioners' 'taxpayer reliance' argument is unavailing. *Dickman,* 465 U.S. at 343, 104 S.Ct. 1086. Contrary to plaintiff's claim, then, the Court, in *Dickman,* wholeheartedly reaffirmed the principles it had earlier enunciated in *Dixon, Automobile Club,* and *Manhattan Equipment.*

4. Plaintiff cites two cases in support of its claim, bordering on an assertion of estoppel, that taxpayers have a right to rely on revenue rulings in

court. Plaintiff correctly notes that in *Dillon, Read & Co., Inc. v. United States,* 875 F.2d 293 (Fed.Cir.1989), the Federal Circuit made statements suggesting that reliance on a revenue procedure (not a revenue ruling) would be appropriate, but plaintiff fails to note that the court, later in that same opinion, expressly refused to rely on that procedure in support of its holding, thereby rendering its earlier comments obvious *obiter dicta. Id.* at 298–99. In the other case cited by plaintiff, *Estate of McLendon v. Comm'r,* 135 F.3d 1017 (5th Cir.1998), the Fifth Circuit allowed the taxpayer to rely on a revenue ruling, but admitted that there was significant tension between its position and that of the Supreme Court. *Id.* at 1024 n. 15. The Fifth Circuit panel found that it was bound to follow its earlier decision in *Silco, Inc. v. United States,* 779 F.2d 282, 286 (5th Cir.1986), which held that taxpayers could rely on such rulings. *Estate of McLendon,* 135 F.3d at 1024–25. Oddly, the Fifth Circuit indicated that while it could ignore a prior circuit precedent based upon an "intervening" decision of the Supreme Court, it could not do so based on a Supreme Court decision "predating" the prior circuit precedent. *Id.* at 1025 n. 15. This court, however, is not so constrained and, therefore, rejects the Fifth Circuit's line of cases in favor of the Supreme Court's (predating) precedent. *See also True Oil Co. v. Comm'r,* 170 F.3d 1294, 1304 (10th Cir.1999) (noting that revenue rulings do not control when contrary to a statute or Congress's expressed intentions); *Quinn v. Comm'r,* 524 F.2d 617, 622–23 (7th Cir.1975) (determining that Commissioner's acquiescence in a tax court case is not binding on the Service).

enced and informed judgment." *Ricards v. United States,* 683 F.2d 1219, 1224 n. 12 (9th Cir.1981). *See also Foil v. Comm'r,* 920 F.2d 1196, 1201 (5th Cir.1990) (revenue rulings are "to be given weight as expressing the studied view of the agency whose duty it is to carry out the statute"). Then, at the polar opposite of the Tax Court are federal courts that have held, in terms analogous to those sometimes applied to interpretative Treasury regulations, that revenue rulings "have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal Revenue Code." *See Dunn v. United States,* 468 F.Supp. 991, 993 (S.D.N.Y.1979). *See also In re Kaplan,* 104 F.3d 589, 599 (3d Cir.1997).

The Federal Circuit, whose precedents, of course, are binding on this court, appears to lie somewhere in the middle of this continuum, possibly with a slight cant towards the position of the Tax Court. Thus, in *Spang Industries, Inc. v. United States,* 791 F.2d 906, 913 (Fed.Cir.1986), that court stated that "a revenue ruling is entitled to some weight as reflecting the Commissioner's interpretation of the regulation, but does not have the same force as a regulation." *See also Xerox Corp. v. United States,* 228 Ct.Cl. 406, 656 F.2d 659, 671 n. 20 (1981) ("[w]hile these rulings are not binding on the Secretary of Treasury or the courts, they may be

helpful in interpreting a statute"). On another occasion, however, the Federal Circuit quoted, with approval, language from a 1934 Supreme Court decision which stated that revenue rulings cited by the Commissioner "have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of law." *Xerox Corp. v. United States,* 41 F.3d 647, 657 (Fed.Cir. 1994) (quoting *Helvering v. New York Trust Co.,* 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361 (1934)). Following the Federal Circuit's lead, this court has mapped out a position that considers revenue rulings, but also does not afford them binding precedence. *See Int'l Bus. Mach. Corp. v. United States,* 38 Fed.Cl. 661, 675 (1997); *Ridenour v. United States,* 3 Cl.Ct. 128, 137 (1983) ("Although revenue rulings do not constitute 'binding precedent,' they provide some guidance as to the correct interpretation of the Internal Revenue Code").[5]

In its discovery requests, plaintiff also seeks information about various private letter rulings (PLRs) and technical advice memoranda (TAMs). As noted by Mertens, "[u]nlike a Revenue Ruling which deals with a specific factual situation that may affect any taxpayer, a private letter ruling is issued at the request of an individual taxpayer." *Mertens, supra,* § 3:87, 3–122. By comparison, a technical advice memorandum is "is-

---

**5.** Some of the decisions which indicate that revenue rulings have the force of precedent rely, either expressly or implicitly, on the concept of *Chevron* deference. *See, e.g., Johnson City Med. Ctr. v. United States,* 999 F.2d 973, 977 (6th Cir.1993) ("[T]his Court accords deference to Revenue Ruling 85–74 under the standard set forth in *Chevron.*"); *CenTra, Inc. v. United States,* 953 F.2d 1051, 1055–57 (6th Cir.1992). Recent Supreme Court decisions limiting the *Chevron* doctrine call these earlier cases into question. In *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), for example, the Supreme Court held that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." The Court held that such agency interpretations of the law are entitled to respect, but only "to the extent that those interpretations have the 'power to persuade.'" *Id.* (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). More recently, in *United States v. Mead Corp.,*

533 U.S. 218, 121 S.Ct. 2164, 2173–75, 150 L.Ed.2d 292 (2001), the Court emphasized that interpretations that do not have the force of law—particularly, those that are not subjected to notice and comment—are "beyond the *Chevron* pale." *Id.,* 121 S.Ct. at 2175. That same term, in *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001), the Court expressly declined to consider whether "Revenue Rulings themselves are entitled to deference," but did conclude that a long and consistently-held IRS interpretation of the Code or its regulations was entitled to "substantial judicial deference" if reasonable. *Id.,* 121 S.Ct. at 1444–45. On balance, these recent Supreme Court decisions suggest that the view taken by the Federal Circuit in *Spang, supra,* and its progeny, that revenue rulings are entitled only to some weight, is gaining currency. *See American Express Co. v. United States,* 262 F.3d 1376, 1382–83 (Fed.Cir.2001) (stating that IRS decisions not adopted in regulations after notice and comment are probably not entitled to *Chevron* deference).

sued in response to a District Director's request arising out of tax return audits," and is "furnished as a way of helping Service personnel close cases and establish and maintain consistent holdings throughout the Service." *Id.* at § 1:13, 1–17–18. Such rulings and memoranda have precedential value only to the specific taxpayers to which they are issued. *Id.* at 1–17. This concept derives statutorily from section 6110(k)(3) of the Code (formerly section 6110(j)(3)), which provides that private letter rulings and technical advice memoranda "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3). At first blush, one can scarcely imagine a prohibition more sweeping, particularly given the ordinary understanding of the term "precedent." [6] And this broad sweep is only confirmed by the statute's legislative history, which spells out its *raison d'etre* in the following terms:

> Under present administrative rules, a private letter ruling, technical advice memorandum, or determination letter is not to be used as a precedent by the IRS or any person. If all publicly disclosed written determinations were to have precedential value, the IRS would be required to subject them to considerably greater review than is provided under present procedures. The committee believes that resulting delays in the issuance of determinations would mean that many taxpayers could not obtain timely guidance from the IRS and the rulings program would suffer accordingly. Consequently, both the committee amendment and the House bill codify the present administrative rules by providing that determinations which are required to be made open to public inspection are not to be used as precedent.

S.Rep. No. 94–938 (1976), p. 311. *See also* H.R.Rep. No. 94–658 (1975), p. 322–23, U.S.Code Cong. & Admin.News 1976, pp. 3439, 3740, 2897, 3219. Not to be overlooked, the prohibition against using or citing

such rulings or memoranda as precedent is emblazoned on the front of every such determination. And, for additional good measure, the prohibition is reiterated both in the IRS's procedural rules, *see* 26 C.F.R. § 301.6110–7(b), and in the revenue procedures which describe the process for obtaining a private letter ruling, *see, e.g.,* Rev. Proc. 92–1, 92–1 Cum. Bull. 516.

Assiduously giving effect to the statute's language, most courts have refused to consider private letter rulings as any form of precedent. *See, e.g., Peerless Corp. v. United States,* 185 F.3d 922, 928 (8th Cir.1999) (affirming district court's decision to exclude from evidence a private letter ruling because the ruling had "no precedential effect"); *American Stores Co.,* 170 F.3d at 1270 (relying on section 6110(k)(3) in "declin[ing] to consider the proffered rulings and memoranda in evaluating the legal arguments of the parties"); *Lucky Stores, Inc.,* 153 F.3d at 966 n. 5 (rejecting taxpayer's argument that "several private letter rulings and one technical advice memorandum … establish[ ] a practice of the IRS permitting deductions such as those claimed by [taxpayer]"), *cert. denied,* 523 U.S. 1111, 119 S.Ct. 1755, 143 L.Ed.2d 787 (1999); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 280 n. 2 (7th Cir.1990) (en banc) (stating that a private letter ruling "may not be used or cited as precedent" and refusing to "consider that portion of [appellant's] brief which relies exclusively on the IRS private letter ruling as authority"), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); *Liberty Nat. Bank & Trust Co. v. United States,* 867 F.2d 302, 305 (6th Cir.1989) (rejecting reliance on private letter rulings alleged to present similar fact situations); *American Ass'n of Christian Schools Voluntary Employees v. United States,* 850 F.2d 1510, 1515 n. 6 (11th Cir.1988) (refusing to consider private letter rulings as evidence

---

6. It is appropriate to consult a dictionary to define the ordinary meaning of a term not explicitly defined in a statute. *Int'l Bus. Mach. Corp. v. United States,* 201 F.3d 1367, 1372 (Fed.Cir. 2000), *cert. denied,* 531 U.S. 1183, 121 S.Ct. 1167, 148 L.Ed.2d 1025 (2001). The dictionary defines the term "precedent" as "any earlier occurrence of something similar" or, secondari-

ly, "something done or said that may serve as an example or rule to authorize or justify a subsequent act of the same or an analogous kind." Merriam–Webster's Collegiate Dictionary 916 (10th ed.1993). *See also* Black's Law Dictionary (7th ed.1999) (defining precedent as "furnish[ing] a basis for determining later cases involving similar facts or issues").

that the "long-standing IRS practice has been to exempt church insurance plans from paying taxes").[7] This court's decisions generally are to similar effect. *See Exxon Corp. v. United States*, 45 Fed.Cl. 581, 668 n. 180 (1999) (finding a letter ruling cited by the plaintiff "totally irrelevant") *aff'd in part, rev'd in part on other grounds*, 244 F.3d 1341 (Fed.Cir.2001); *Reliant Energy Inc. v. United States*, 45 Fed.Cl. 302, 307 n. 8 (1999); *Piccadilly Cafeterias, Inc. v. United States*, 36 Fed.Cl. 330, 333 (1996); *Clayton v. United States*, 33 Fed.Cl. 628, 639 (1995) (because of the statutory prohibition, the court "cannot rely on [a] letter ruling") *aff'd*, 91 F.3d 170 (Fed.Cir.1996) (table), *cert. denied*, 519 U.S. 1040, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996); *Snap–On Tools, Inc. v. United States*, 26 Cl.Ct. 1045, 1060 (1992), *aff'd*, 26 F.3d 137 (Fed.Cir.1994) (table). *Cf. Buckeye Power, Inc. v. United States*, 38 Fed.Cl. 283, 285–86 (1997).

The Federal Circuit has generally steered clear of this issue. In *Deluxe Corp. v. United States*, 885 F.2d 848, 853 (Fed.Cir.1989), for example, the court noted that its holding was consistent with private letter rulings, but later stated that such rulings were "not relied upon in our conclusion." However, in *Int'l Bus. Mach. Corp. v. United States*, 170 Cl.Cl. 357, 343 F.2d 914, 924 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966)(*IBM*), the Court of Claims suggested that letter rulings might be used to demonstrate that the Commissioner

had abused his discretion under section 7805(b) of the Code,[8] by issuing rulings that treated competing taxpayers differently. In that case, IBM and Remington Rand, then IBM's lone competitor in the computer industry, requested rulings within months of each other regarding virtually identical products. The IRS issued IBM an unfavorable ruling and erroneously (as later determined by the IRS) issued Remington a favorable ruling, resulting in IBM's paying taxes that Remington was excused from. The Court of Claims remedied the situation by allowing IBM to recover the taxes paid for the period in which Remington had not been required to pay the tax. While *IBM* thus anticipates using letter rulings to demonstrate disparate treatment of direct competitors, two subsequent Court of Claims cases make clear the limits of this decision, indicating that it applies only where: (i) two or more taxpayers in direct economic competition have each applied for a ruling and only one has received a favorable ruling; and (ii) the taxpayer denied the favorable ruling is arguing that the Commissioner abused his discretion under section 7805(b) by failing to apply a new legal position only prospectively. *See Knetsch v. United States*, 172 Cl.Cl. 378, 348 F.2d 932, 940, 940 n. 14 (1965), *cert. denied*, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966); *Bornstein v. United States*, 170 Cl.Cl. 576, 345 F.2d 558, 564 n. 2 (1965).[9] Thus, *IBM* only ever so slightly expands the realm in which private letter rulings may be cited or used.[10]

---

7. By comparison, some decisions have mistakenly construed section 6110(k)(3) as simply indicating that private letter rulings and technical advice memoranda are not "binding precedent." *See, e.g., Intermet Corp. & Subs. v. Comm'r*, 209 F.3d 901, 908 (6th Cir.2000). But, the plain language of that section clearly precludes a court from giving such rulings and memoranda *any* precedential weight.

8. Section 7805(b) of the Code provides: "The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

9. *See also Easter House v. United States*, 12 Cl.Ct. 476, 489 (1987), *aff'd*, 846 F.2d 78 (Fed.Cir. 1988) (table), *cert. denied*, 488 U.S. 907, 109 S.Ct. 257, 102 L.Ed.2d 246 (1988); *Carpenter v. United States*, 7 Cl.Ct. 732, 739–40 (1985), *aff'd*, 790 F.2d 91 (Fed.Cir.1986) (table).

10. In *Computer Sciences Corp. v. United States*, 50 Fed.Cl. 388 (Fed.Cl.2001), Senior Judge Yock recently held that the IRS had abused its discretion, under section 7805(b) of the Code, in issuing a revenue ruling that prospectively denied a favorable tax treatment to taxpayers who had not yet filed their returns, but which allowed taxpayers who had already filed their returns to retain that treatment. He construed *IBM* broadly, holding that the decision stands for the proposition "that the Service must treat similarly-situated taxpayers in a similar manner, absent some rational basis for discrimination." *Id.* at 394. Judge Yock then cited various private letter rulings as evidence that the IRS had previously construed an earlier revenue ruling to authorize the favorable tax treatment at issue. While the actual holding of this decision may be narrow, the rationale employed therein could be viewed as exceedingly broad, so broad, according to plaintiff, as to support the pervasive discovery and use of private letter rulings and other infor-

For its part, the Supreme Court has considered the precedential impact (or lack thereof) of private letter rulings or technical advice memoranda on three occasions. In *Hanover Bank v. Comm'r*, 369 U.S. 672, 686, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962), the Court stated that "although the petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them, such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." (Footnote omitted). This decision, however, predates the enactment of section 6110 as part of the Tax Reform Act of 1976, and thus does not stand for the proposition that letter rulings may be used as precedent notwithstanding that statute. In *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), the Court cited such rulings, but only as an indication that the IRS had regularly considered and issued rulings on a particular subject. *Id.* at 261 n. 17, 101 S.Ct. 2288. *See also Xerox Corp.*, 656 F.2d at 660 n. 3 (citing private rulings to similar effect). Most recently, in *United States v. Hill*, 506 U.S. 546, 113 S.Ct. 941, 122 L.Ed.2d 330 (1993), the Supreme Court reversed a Federal Circuit decision that had found a TAM "instructive," [11] eschewing any reliance on the same memorandum by admonishing that "the Code specifically provides that such memoranda 'may not be used

or cited as precedent.'" *Id.* at 564 n. 12, 113 S.Ct. 941. While not determinative in their own right, these latter two decisions, nonetheless, are consistent with those cases that have refused to afford private letter rulings and technical advice memoranda any precedential weight.

■ Finally, at long last, we come to the role played by General Counsel Memoranda (GCMs) in tax refund litigation. GCMs "are legal memoranda from the Office of Chief Counsel to the IRS prepared in response to a formal request for legal advice from the Assistant Commissioner (Technical)." *Tupper v. United States*, 134 F.3d 444, 448 (1st Cir. 1998); *Taxation with Representation Fund v. Internal Rev. Serv.*, 646 F.2d 666, 669 (D.C.Cir.1981). Under the Treasury Regulations, GCMs do not establish precedent, and taxpayers cannot cite them as authority against the United States. *See* 26 C.F.R. § 1.6661–3(b)(2)(2000). *See also Tupper*, 134 F.3d at 448. Accordingly, while they may be looked to as a research and planning tool, they are not authority in a refund suit. *See Stichting Pensioenfonds Voor de Gezondheid v. United States*, 129 F.3d 195, 200 (D.C.Cir. 1997)(GCMs "have no precedential value"), *cert. denied*, 525 U.S. 811, 119 S.Ct. 43, 142 L.Ed.2d 33 (1998); *Disabled American Veterans v. Comm'r*, 942 F.2d 309, 315 n. 5 (6th Cir.1991) ("[s]uch informal, unpublished opin-

mation in the IRS's files to demonstrate unequal treatment among taxpayers. With all due respect, however, this court believes that such a reading of this opinion, whether fair or not, represents an unwarranted extension of *IBM* (and other precedents discussed in Judge Yock's opinion)—one that separates *IBM* from its important factual moorings and ignores the subsequent limiting decisions in *Knetsch, supra*, and *Bornstein, supra*. In general, notwithstanding Justice Frankfurter's oft-quoted statement that "[t]he Commissioner cannot tax one and not tax another without some rational basis for the difference," *United States v. Kaiser*, 363 U.S. 299, 308, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (Frankfurter, J., concurring), the manifest weight of precedent rejects a "least common denominator" notion of federal taxation, in which the law that the Congress actually enacts can be short-circuited and disregarded any time the IRS has afforded a single taxpayer or even a group of taxpayers treatment more favorable than the law provides. Thus, in *Dixon*, 381 U.S. at 80, 85 S.Ct. 1301, the Supreme Court noted Justice

Frankfurter's concurrence in *Kaiser*, but rejected the taxpayer's reliance thereon, stating that "insofar as petitioner's arguments question the policy of empowering the Commissioner to correct mistakes of law retroactively when a taxpayer acts to his detriment, their arguments are more appropriately addressed to Congress." *See also Automobile Club*, 353 U.S. at 183, 77 S.Ct. 707 ("the doctrine of equitable estoppel is not a bar to correction by the Commissioner of a mistake of law"); *Davis v. Comm'r*, 65 T.C. 1014, 1022, 1976 WL 3750 (1976) ("[i]t has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination").

11. *See Hill v. United States*, 945 F.2d 1529, 1538 (Fed.Cir.1991), *rev'd*, 506 U.S. 546, 113 S.Ct. 941, 122 L.Ed.2d 330 (1993).

ions of attorneys within the IRS are of no precedential value"); *Old Harbor Native Corp. v. Comm'r*, 104 T.C. 191, 206–07, 1995 WL 35310 (1995) ("a general counsel memorandum is not binding precedent on this Court"). Nonetheless, such memoranda may be relevant in a refund suit as indicating the IRS interpretation of its own regulations and procedures. However, in that regard, such memoranda are entitled to no more weight or deference than any other informal agency interpretation, including a position taken on brief. *See, e.g., American Express Co.*, 262 F.3d at 1382–83 (illustrating application of this rule).

### B. Redux

The following pathmarking principles can be distilled from the foregoing discussion:

■ Revenue rulings are not binding precedent, but are entitled to some weight, as reflecting an interpretation of the law by the agency entrusted with its interpretation. Such rulings, however, do not require this court to apply a mistaken view of the law to a particular taxpayer. In particular, Supreme Court precedent makes clear that if a revenue ruling is found to be unreasonable or contrary to law, it is binding neither on the Commissioner nor this court, based on the rationale that the Congress, and only the Congress, has the power to make law.

■ Private letter rulings and technical advice memoranda, in accordance with section 6110(k)(3) of the Code, may not be used or cited in any precedential way and thus, *a fortiori*, may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative than another. Rather, such rulings and memoranda may be relied upon not for their substance, but only as indication: (i) of the IRS' administrative practice (*i.e.*, that it has issued rulings regarding a particular subject); or (ii) that, under the *IBM* decision, the Commissioner has abused his discretion under section 7805(b) of the Code in issuing different rulings to two directly competing taxpayers. More extensive use or citation of such rulings not only flatly ignores the plain language of section 6110(k)(3), but also threatens the careful compromise struck by the Congress in enacting that section—one that recognizes the functional relationship between allowing the IRS to use a streamlined review process to issue such rulings and memoranda on a relatively expedited basis in exchange for assurances that those documents will have no precedential impact except as to the taxpayers to which they are issued.

■ Finally, General Counsel Memoranda do not establish precedent, but may be used as a research tool. When reasonable, they may be afforded the same deference as any informal interpretation by the IRS of a statute or regulation, but, in that regard, hold no special significance.

Armed with these principles, the court now turns to the particulars of the pending discovery motions

### C. Plaintiff's Requests for Admission

As noted above, plaintiff has propounded 230 separate requests for admission in two sets. These requests can be categorized loosely into five groups: (i) requests that seek to confirm the genuineness of various IRS administrative documents, including revenue rulings, private letter rulings, technical advice memoranda, General Counsel Memoranda and segments from the Internal Revenue Manual; (ii) requests that seek to confirm that particular statements were made in those IRS administrative documents; (iii) requests that seek to confirm various legal propositions assertedly relevant to the instant case; (iv) requests that seek to confirm the accuracy of quoted provisions of law and legislative history; and (iv) requests that seek to confirm aspects of the IRS' understanding of the meaning of Revenue Ruling 76–28, including the IRS's understanding of various private letter rulings and technical advice memoranda.

■ Regarding such requests for admission, RCFC 36(a) provides:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or

of the application of law to facts including the genuineness of any documents described in the request.

This rule, like its similarly-numbered counterpart in the Federal Rules of Civil Procedure, thus anticipates three classes of requests for admissions: (i) requests that relate to statements or opinions of fact; (ii) requests that relate to statements or opinions of the application of law to facts; and (iii) as a subset of the second category, requests that relate to the genuineness of any documents. *See 7 Moore's Federal Practice* § 36.10[8] (Matthew Bender 3d ed.2001). *See also English v. Cowell,* 117 F.R.D. 132, 135 (C.D.Ill.1986); *Williams v. Krieger,* 61 F.R.D. 142, 144 (S.D.N.Y.1973). Each request for admissions must be direct, simple and "limited to singular relevant facts." *SEC v. Micro–Moisture Controls,* 21 F.R.D. 164, 166 (S.D.N.Y.1957).

According to the Committee Notes on the Federal Rules, Rule 36 serves two vital purposes, "both of which are designed to reduce trial time." Fed.R.Civ.P. 36 Advisory Committee Notes (1970 Am.). Those purposes are "first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *Id.* The Committee Notes further emphasize that Rule 36(a) "does not authorize requests for admissions of law unrelated to the facts of the case." *Id.* In short, hypothetical legal questions are not within the purview of RCFC 36(a). *See S.A. Healy Co./Lodigiani USA Ltd. v. United States,* 37 Fed.Cl. 204, 205 (1997); *Ransom,* 8 Cl.Ct. at 647–48; *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.* 1995 WL 625744, * 6 (D.Kan.1995) ("opinions on abstract propositions of law are . . . objectionable"); *Williams,* 61 F.R.D. at 144 ("pure requests for admissions of law" are prohibited); *7 Moore's Federal Practice, supra* § 36.10[8].

Plaintiff has moved to determine the sufficiency of the defendant's objections and responses to certain of its first set of requests

for admission. Defendant opposes this motion and has moved to strike plaintiff's entire second set of requests. In considering these motions, the court will group together functionally related requests.

### a. Requests That Seek To Confirm the Genuineness of Documents

Plaintiff challenges the sufficiency of defendant's objections to requests for admission numbered 32, 34, 45, 47, 57, 65, and 75, all of which concern the genuineness of internal IRS documents. Additionally, there are six requests from the second set (numbers 115, 162, 198, and 202) which concern the genuineness of certain IRS documents and other potential sources of law.

### (1) Requests 32, 34, 45, 47, 57, 65 and 75

These requests from plaintiff's first set concern the genuineness of IRS documents related to the creation of TAMs. The documents at issue here include a "Statement of Facts and Position" submitted with a request for technical advice, excerpts from the IRS's technical case histories of two TAMs, a form entitled "Request for Technical Advice from Assistant Commissioner," a report prepared in conjunction with TAM 8303002, a National Office TAM, and a "Request for Technical Advice Concerning Deductions for Contributions to Union Pension Plan." As noted above, TAMs have no precedential value and only the most limited utility in the context of a refund suit. Given this limitation, in the court's view, materials from the IRS files underlying such memoranda have no potential relevance whatsoever in this litigation—either in leading to other discoverable information or in their own right.

### (2) Requests 115, 162, 198 and 202

These requests from plaintiff's second set address the genuineness of two PLRs, one GCM and an excerpt from the Internal Revenue Manual.[12] The copies that

---

12. The purpose of the IRS Manual is to govern the internal affairs of the Internal Revenue Service. *See United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983). The provisions of the manual do not have the force of law and are not mandatory or binding for the IRS. *See id.* *See also Anderson v. United States,* 44 F.3d 795, 799 (9th Cir.1995). Despite these weaknesses, the manu-

plaintiff would like authenticated are redacted versions taken from Westlaw and a Commerce Clearing House publication. Because these documents are not the originals issued by the IRS and because they have potential relevance to the case, albeit limited, plaintiff's admission requests seeking to confirm the genuineness of these documents are appropriate and, therefore, defendant's motion for a protective order is denied as to these requests.

### b. Requests That Seek To Confirm The Content Of Documents

Many of plaintiff's requests in both its first and second sets ask defendant to confirm the text of certain documents. The contested requests in this category include numbers 21, 48, 49, 50, 51, 52, 53, 54, 55, 56, 66, 67, 76, 100, 105, 116, 117, 127, 135, 155, 163, 165, 172, 176, 179, 182, 185, 194, 200, 203, 205, 209, 214, 215, 218, and 220. For the reasons given below, the court finds none of these requests appropriate.

#### (1) Requests 21, 100, 105, 127, 135, 155, 172, 176, 179, 182, 185 and 194

██ These requests, scattered among plaintiff's two sets of admissions requests, seek to confirm selected text from documents that defendant has already admitted are genuine in responding to plaintiff's first set of requests for admission. In the court's view, once the genuineness of entire documents has been established, there is no additional benefit to be derived from confirming specific portions thereof. Requests of this nature are manifestly "unreasonably cumulative" and "duplicative" under RCFC 26(b)(1). *See Van Wagenen v. Consolidated Rail Corp.,* 170 F.R.D. 86, 87 (N.D.N.Y.1997) (denying motion to compel answers to requests for admission seeking to confirm genuineness of quotes from documents whose authenticity had already been admitted). *See also Caruso v. Coleman Co.,* 1995 WL 347003 (E.D.Pa. 1995) (striking request for admission as to whether or not a particular witness testified

to certain information at a deposition as duplicative of the deposition itself). *But see S.A. Healy Co.,* 37 Fed.Cl. at 205 (permitting admission requests that establish that a "contract says what it says").

#### (2) Requests 214, 215, 218 and 220

██ Certain of plaintiff's second set of requests for admission seek to confirm the genuineness of excerpts from a public law and a portion of a Conference Committee Report. These are publicly-available legal documents about which defendant has no special knowledge and of which this court can take judicial notice. As such, these requests are inappropriate as "obtainable from some other source that is more convenient, less burdensome, or less expensive." RCFC 26(b)(1). *See also English,* 117 F.R.D. at 135 ("the request asks Defendants to admit to what the Court obviously has judicial notice of. It is absurd to require Defendants to admit to the existence of a whole body of federal law.").

#### (3) Requests 35, 48, 49, 50, 51, 52, 53, 54, 55, 56, 66, 67 and 76

In these requests, plaintiff seeks to confirm quotes from the same internal documents relating to various TAMs that are the subject of requests 32, 34, 45, 47, 57, 65 and 75. Having already concluded that the entire documents referenced in these requests are irrelevant, it follows, *a fortiori,* that the quoted portions thereof referenced in these requests are also irrelevant. Accordingly, requests seeking to verify the genuineness of those quotes are inappropriate.

#### (4) Requests 116, 117, 163, 165, 200, 203, 205 and 209

These requests seek to confirm the genuineness of selected text from two private letter rulings, a GCM and a portion of the Internal Revenue Manual. However, the referenced documents are the same as those whose genuineness is the subject of requests

---

al has been used, on a limited basis, to provide guidance in interpreting terms in regulations. *See United States v. Boyle,* 469 U.S. 241, 243 n. 1, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (citing IRM section 4350(24) for what constitutes reasonable

cause for filing a late tax return). Thus, it is possible for sections of the IRS manual to bear a limited relevance to actions such as the one at hand.

115, 162, 198 and 202, to which, the court has concluded, defendant must reply. Accordingly, if, under the latter requests, defendant admits the genuineness of the entire documents, it need not address the genuineness of the excerpts therefrom. If, on the other hand, defendant denies the genuineness of any of these documents, it shall respond to the corresponding requests for admission seeking to confirm portions of the text of those documents.

### c. Requests That Seek to Confirm Legal Propositions

■ The bulk of plaintiff's two sets of requests for admission are encompassed in this category (numbers 19, 23, 31, 33, 38, 43, 64, 70, 74, 81, 91–95, 98, 99, 101, 102, 104, 110, 114, 118–121, 124–26, 128, 129, 136–54, 156–61, 164, 166–68, 171, 175, 177, 178, 180, 181, 183, 184, 186–92, 195–97, 199, 201, 204, 206–08, 210–13, 216, 217, 219, 221–28). These requests follow several patterns. Fifty-five of them seek to have defendant admit to statements constituting interpretations of Revenue Rulings, PLRs, TAMs, and other IRS documents.[13] Five seek conclusions based upon internal IRS documents that the court has already found to be irrelevant. Eighteen ask for admissions regarding the status of the law and twenty require that the defendant interpret statutes or other legal documents. Three combine otherwise appropriate factual inquiries with legal conclusions.[14]

In response to defendant's objections, plaintiff baldly asserts that its requests merely require application of the law to the facts of this case and, as such, are appropriate under RCFC 36(a). But, while admis-

sions seeking such an application of the law are expressly permitted by that rule, plaintiff has made no effort—either in its admission requests or in its memoranda in support thereof—to connect the legal propositions contained in its admissions requests with the specific facts and circumstances of this case. Indeed, some of the requests clearly have nothing to do with the facts of this case. For example, Request 180 asks defendant to admit to a legal conclusion involving "single-employer defined benefit plans," even though this case involves a multi-employer plan. As discussed above, such a request, which essentially seeks a pure or hypothetical admission of law, is not authorized by RCFC 36(a).[15] The same can be said of all the requests in this category, each of which involves a legal conclusion not expressly tethered to the facts of this case.

### d. Requests That Seek Background Information about IRS Documents

In twelve of its requests from its first set, plaintiff requests information concerning the taxpayers who are the subjects of certain TAMs and PLRs (Numbers 18, 19, 29, 30, 41, 42, 43, 62, 63, 64, 73, & 74). An additional four requests seek information about the procedure for compiling the background files for certain TAMs, as well as the identities of the agents who wrote documents in them (Numbers 36, 44, 46, 58, & 77). For the reasons that follow, none of these requests for admission are appropriate.

#### (1) Requests 18, 29, 30, 41, 42, 62, 63, 73 and 74

The information sought in these requests would identify the industries, the unions and

---

**13.** In addition to requiring a legal conclusion, many of these requests are objectionable on other grounds. For example, Requests 19, 38, 43, 64 and 74 also implicate information protected under section 6103(a).

**14.** For example, Request 225 asks "Admit that the Service has not issued a Revenue Ruling, Revenue Procedure or Notice that provides for disallowance of deductions under section 413(b)(7) on the basis of any deduction limitation determined on an employer-by-employer basis." The first half of this request seeks to confirm specific IRS actions, but the second half of the question requires the defendant to make legal

interpretations and agree to broad legal conclusions.

**15.** See also Williams, 61 F.R.D. at 144 ("pure requests for admissions of law are improper under Rule 36") and cases cited, infra, at part B. Indeed, even if defendant were to admit to such requests, they would not be binding on this court. See LaForte v. Horner, 833 F.2d 977, 982 (Fed.Cir.1987) (rejecting an admission as not determinative of the meaning of a statute because statutory interpretation is a legal issue to be determined by the court not agreement of the parties), cert. denied, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988).

the nature of the pension plans involved in certain TAMs or PLRs. This information apparently does not appear in the copies of the documents plaintiff retrieved from Westlaw and Commerce Clearing House. This is not coincidental, as section 6110(c) of the Code requires the Secretary to delete such information before IRS written determinations are made available to the public. Information redacted from PLRs and TAMs before public release is also protected from disclosure by section 6103(a) of the Code, like section 6110, enacted as part of the Tax Reform Act of 1976, which provides for the confidentiality of tax returns and return information and prohibits the disclosure thereof, except as authorized. *See Church of Scientology of California v. Internal Rev. Serv.,* 484 U.S. 9, 11–12, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987); *Heimark v. United States,* 14 Cl.Ct. 643, 644–45 (1988). Under section 6103(b)(2)(B) of the Code, "return information" is specifically defined to include "any part of any written determination or any background file document relating to such written determination . . . which is not open to public inspection under section 6110 . . . "

Plaintiff, however, argues that the IRS may reveal the requested information under an exception to the anti-disclosure rule of section 6103(a). The battleground for this contention is section 6103(h)(4)(B) of the Code, which provides that "[a] return or return information may be disclosed in a Federal . . . judicial . . . proceeding pertaining to tax administration" but only "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding." Assuming *arguendo,* plaintiff's request involves "the treatment of an item reflected on [a] return," it remains that the information sought is not "directly related" to the resolution of an issue before this court. Courts construing the phrase "directly related" have generally found that term vague and have resorted to the legislative history of section 6103 to determine what Congress intended. *See, e.g., Shell Petroleum, Inc. v. United States,* 47 Fed.Cl. 812, 817 (2000); *Heimark,* 14 Cl.Ct. at 648–49; *see also Church of Scientology,* 484 U.S. at 16–17, 108 S.Ct. 271 (relying on legislative histo-

ry in construing section 6103). This court agrees that the phrase "directly related" is ambiguous and thus turns to the legislative history for illumination.

To describe the meaning of the phrase "directly related," the legislative history contrasts the requirements of section 6103(h)(4)(B) with those of section 6103(h)(2)(B). The latter provision authorizes the Justice Department to receive a tax return and return information where "treatment of an item reflected on such return is or may be related to the resolution of an issue in [a] proceeding or investigation." Discussing the relationship between these two exceptions, the Conference Committee Report provides:

> The return or return information of a third party will be disclosed to the Justice Department in the event that the treatment of an item reflected on his return is or may be relevant to the resolution of an issue of the taxpayer's liability under the Code. The return or return information of a third party will also be disclosed to the Justice Department when the third party's return or return information relates or may relate to a transaction between the third party and the taxpayer whose tax liability is or may be at issue and the return information pertaining to that transaction may affect the resolution of an issue of the taxpayer's liability. . . . A third party return may also be disclosed in a court proceeding, subject to the same item and transactional tests described above, except that the items and transactions must have a direct relationship to the resolution of an issue of the taxpayer's liability.

House Conf. Rep. No. 94–1515, p. 477–78, U.S.Code Cong. & Admin.News 1976, pp. 4118, 4182. *See also* Jt. Comm. on Tax'n, Summary of the Tax Reform Act of 1976, 1976–3 Cum. Bull. 411, 479 (summarizing this legislative history). The Senate Report, prepared by the Senate Finance Committee, in which this legislation originated, gives several examples of situations that would meet the statute's requirements. The item test would be met, according to this report, where the treatment of items on the return of a pass-through entity (*e.g.,* a subchapter S corpora-

tion or a partnership) is relevant to the resolution of the taxpayer's liability because of some relationship (*e.g.*, shareholder, partner) of the taxpayer with the entity. S.Rep. No. 94–938, p. 325. And as an example of a situation that would meet the transactional test, the report offers a situation involving the purchase of a business, where the treatment by the buyer of an item (*e.g.*, the amortization of an intangible asset) is inconsistent with the treatment afforded the same item by the seller (*e.g.*, capital gain treatment). *Id.*

 Thus, the legislative history establishes that Congress intended that two separate requirements would be met before tax returns or return information may be disclosed by the IRS under section 6103(h)(4)(B). First, in order to qualify as "related" information, either an item reflected on a return must be related to the resolution of an issue in the proceeding (the "item test") or there must exist a transactional relationship between a party and the taxpayer (the "transaction test"). And then to be "directly" related, there must be a "direct relationship" between the information and the resolution of an issue in the proceedings. *See* House Conf. Rep. No. 94–1515 (1976), p. 477–78; S.Rep. No. 94–938 (1976), p. 325–26. *See Heimark,* 14 Cl.Ct. at 649–50.[16] Critically, for our purposes, these committee reports, both by way of explanation and example, attest that neither the "item test" nor the "transaction test" are met when the only link between the taxpayer seeking the information and the third party is that, owing to unrelated tax events, both taxpayers claimed the same tax treatment for a similar item of income, deduction or credit.[17] Thus, neither the transaction test nor the item test are met simply because both taxpayers' returns involve, for example, the amortization of the same type of intangible asset or the exclusion of a particular category of income. And the reason for this result is plainly that, except, perhaps, in a case involving the application of the *IBM* doctrine, the treatment of an item on the third-party's return, whether as originally claimed or allowed by the IRS, has no legal relevance to the proper tax treatment of that same item on the return of the taxpayer requesting disclosure.

 That rationale holds true and is dispositive here—the information plaintiff seeks is neither "related" nor, especially, "directly related" to the resolution of the issue faced by the court. In arguing to the contrary, plaintiff would have this court broadly construe section 6103(h)(4)(B) to authorize the IRS to release a taxpayer's information whenever a ruling requested by that taxpayer involved the same issue raised in the litigation. Such a construction, however, would be tantamount to rewriting the statute, deleting, at very least, the word "directly," and, perhaps the word "related," as well. Under plaintiff's construction, release of third-party taxpayer information would be the norm, not the exception, as the circumstances warranting such releases—alleged commonality of tax treatment—would exist in many cases and virtually every case involving an industry-wide issue. To release return information in such circumstances would fly in the face not only of the specific legislative purpose underlying section

---

16. *See also* Michael I. Saltzman, *IRS Practice and Procedure* ¶ 4.06[5][b] (tax return information "may be disclosed in a tax proceeding, subject to the same item and transaction tests applicable in disclosures to the Justice Department, except that the items and transactions must have a 'direct relationship' to the resolution of an issue in the proceeding").

17. Illustrating this point, the Senate Committee Report identifies two situations that would meet neither the item test nor the transactional test. The first is where an issue existed as to whether compensation paid to an executive was reasonable (under section 162 of the Code). In such circumstances, the report indicated that a taxpayer could not obtain returns or return information of other companies reflecting the compensation paid to their executives. S. Rep No. 94–938, at 325. The second involved a section 482 case (involving the reallocation of profits and losses among related companies), in which a taxpayer might defend against a tax deficiency by asserting that the price paid a subsidiary for a product was the same price paid between unrelated companies. In such circumstances, the report indicates that the return or return information of a company unrelated to the taxpayer would not be disclosable under either the item or transactional tests. Id. at p. 325–26. *See Shell,* 47 Fed.Cl. at 819.

6103(h)(4)(B), but also the broader legislative history of section 6103(a), which repeatedly emphasizes the vital importance to tax administration of maintaining the privacy of tax returns and return information.[18] See Church of Scientology, 484 U.S. at 17, 108 S.Ct. 271 (rejecting an interpretation of an exception to section 6103 that "would work such an alteration to the basic thrust of" that section). Moreover, this result would eviscerate important protections contained in section 6110 of the Code, designed to allow taxpayers seeking letter rulings and TAMs to protect tax information submitted by them in seeking such a determination.[19] As such, plaintiff's broad construction of the exception contained in section 6103(h)(4)(B), if adopted, would work a sea change that would swamp not only the general rule requiring nondisclosure of tax return information, but the protections against such disclosure contained in section 6110, as well. Compare Tax Analysts v. Internal Rev. Serv., 117 F.3d 607, 616 (D.C.Cir.1997) (section 6103 and 6110 are in pari materia and should be construed consistently).

Plaintiff, however, contends that in Shell Petroleum, Inc. v. United States, 46 Fed.Cl. 719 (2000), motion for reconsideration denied, 47 Fed.Cl. 812 (2000), this court broadly construed the "directly related" requirement in section 6103(h)(4)(B) in a fashion that would permit the discovery requested. In Shell, this court ruled that a taxpayer

seeking a tax credit for oil produced from tar sands could potentially receive information from other oil-producing taxpayers' certificates of credit under section 6103(h)(4)(B). Under the IRS's interpretation of the tax provision at issue in that case, the tax credit was available only for extraction techniques that were not widely employed. Judge Damich ordered an in camera review of other taxpayers' certificates in an effort to ascertain whether those certificates provided evidence regarding whether Shell's extraction method was widely used. Shell, 46 Fed.Cl. at 724–25. In a motion for reconsideration (joined by one of the companies whose certificate was to be provided for in camera review), the government, apparently for the first time, made arguments based upon the legislative history of section 6103(h)(4)(B). Shell, 47 Fed.Cl. at 816.

In denying the motion for reconsideration, Judge Damich found that the term "directly related" was "vague," and, based upon that finding, carefully examined the legislative history. His opinion, however, only indirectly discussed portions of the Senate and Conference Committee reports that outlined the "item" test, and did not discuss the "transaction test"—he did not explicitly adopt either the "item test" or the "transaction test." However, Judge Damich took great care to emphasize that he was not equating the concept of "directly related" under section

18. While some decisions have suggested that section 6103 was enacted primarily to prevent the improper uses of tax return information for political purposes, the legislative history of the Tax Reform Act of 1976 reflects a much broader purpose for this provision. The accompanying committee reports thus list numerous procedures under which the IRS had released taxpayer information to the Justice Department and other Federal and State agencies for nontax purposes, noting that such uses had "raised the question of whether the public's reaction to this possible abuse of privacy would seriously impair the effectiveness of our country's very successful voluntary assessment system which is the mainstay of the Federal tax system." S.Rep. No. 94–938, p.317, U.S.Code Cong. & Admin.News 1976, pp. 3439, 3747. See also. Confidential Informant 92–95–932X v. United States, 45 Fed.Cl. 556, 558 (2000). To protect the integrity of the tax system and to promote accuracy in tax reporting, the Congress thus enacted the "general rule" that "returns and return information are to be confi-

dential and not subject to disclosure," except as provided in one of the statute's exceptions. Id. at 318. See also Ingham v. United States, 167 F.3d 1240, 1245 (9th Cir.1999) ("statute is designed to protect the flow of information between taxpayers and the Internal Revenue Service by controlling the disclosure of tax information by government employees").

19. Thus, section 6110(g) of the Code requires the IRS to make publicly available a redacted version of a written determination and redacted versions of certain of the background materials relating to the determination. Under section 6110(g)(1)(A), not less than seventy-five days before disclosing these materials, the IRS must notify the person who received the written determination that it intends to make these disclosures. That individual, if he or she believes that the IRS is releasing more information than is permitted by section 6110(g), is then authorized to file suit in the United States Tax Court challenging the release. See § 6110(f)(3)(A).

6103(h)(4)(B) with the standard of relevancy in Rule 401 of the Federal Rules of Evidence.[20] *Shell,* 47 Fed.Cl. at 816, 819. Nonetheless, he did hold that the definition of "relevant evidence" contained in Rules 401 and 404 of the Federal Rules of Evidence "serves as a helpful guide" in determining whether tax return information was "directly related" within the meaning of section 6103(h)(4)(B). *Id.* at 818–19. Based upon this analysis, Judge Damich concluded only that the certificates "might be 'directly related,'" deferring the final decision whether to release any of this information until he had the opportunity to conduct the *in camera* review. *Id.* at 820. Following this review, the court apparently released heavily redacted versions of the certificates to the plaintiff. But, Judge Damich ultimately did not rely on any of this information in recently granting the defendant's motion for summary judgment and dismissing the plaintiff's complaint. *See Shell Petroleum Inc. v. United States,* 50 Fed.Cl. 524 (2001).

Contrary to plaintiff's claims, *Shell* provides no basis for authorizing the release of the information requested here. Unlike the instant case, the information sought in *Shell* potentially related to a critical factual issue therein and thus was much more related to the issue before that court than is the case with respect to the information sought here. Even were this not the case, it must be emphasized that the court, in *Shell,* did not hold that all evidence admissible under the Federal Rules of Evidence is "directly related" to an issue. To be sure, the relevancy standard in the Federal Rules of Evidence provides an outer boundary on what may be disclosed under section 6103(h)(4)(B)—if information is not relevant at all, it obviously does not meet the requirements of that paragraph. But, as Judge Damich's opinion in *Shell* infers, because a document meets the evidentiary relevancy standard does not mean that it also meets the disclosure requirements—the two standards are not coterminous. Indeed, the language establishing what is "relevant evidence" under the Federal Rules of Evidence is quite different

and certainly much broader than the "directly related" language in section 6103(h)(4)(B)—a difference which the legislative history of the latter provision indicates should not be overlooked. That legislative history, in fact, cites several examples of relevant, admissible evidence that Congress, nonetheless, indicated should not be disclosed under section 6103(h)(4)(B). *See* S.Rep. No. 94–938, pp. 326, U.S.Code Cong. & Admin.News 1976, pp. 3439, 3755 ("return of a third-party witness could not be introduced in a tax proceeding for purposes of discrediting that witness"); House Conf. Rep. No. 94–1515, p. 482, U.S.Code Cong. & Admin.News 1976, pp. 4118, 4187 ("under the conference agreement a return or return information would not be admissible for purposes of 'collateral impeachment'"). *See also Heimark,* 14 Cl.Ct. at 649. Finally, to the extent Judge Damich's opinion can be read to reject the "item" and "transactional" tests outlined in the legislative history of section 6103(h)(4)(B), this court, for the reasons described above, respectfully concludes to the contrary.

Accordingly, without mapping the outer contours of what information is "directly related" to an issue in litigation, this court is quite convinced that plaintiff's requests fall far short of what is required to support the release of taxpayer information under section 6103(h)(4)(B). The relationship between the requested information and this case is decidedly indirect and tangential, and, as such, plaintiff, not surprisingly, has failed to show that the *information requested is* "related," let alone "directly related," to an issue before the court within the meaning of section 6103(h)(4)(B). The general rule of nondisclosure in section 6103(a) thus fully applies and, based upon that provision, the court concludes that the requests for admission in this grouping are all inappropriate.

### (2) Requests 36, 44, 46, 58 and 77

These requests seek admissions concerning the procedure for compiling background IRS files and the participants in that proce-

---

**20.** This rule provides that "relevant evidence" is that evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.Evid. 401.

dure. The court has determined that those files are irrelevant to this action. It stands to reason that if the files themselves are irrelevant the order of when certain documents were created and who authored them are also irrelevant. *See McLeod v. United States*, 2000 WL 1902257, *1–2, 2000 U.S. Dist. Lexis 18012, *5–6 (D.Nev.2000) (finding IRS personnel records and information regarding location of IRS files irrelevant).

### e. Duplicate Requests

Plaintiff makes twelve requests in its second set that ask for the exact same information as requests made in its first set (Numbers 122, 123, 130, 131, 132, 133, 134, 169, 170, 173, 174, & 193). Most of these requests are *verbatim* copies of requests to which the defendant has already admitted. These requests thus are obviously cumulative and unnecessary and, indeed, border on being sanctionable under RCFC 37.

### f. Requests That Seek Information on IRS Regulations

 Plaintiff's requests numbered 229 and 230 seek information regarding the status of regulations authorized by statute, but not yet promulgated by the IRS. In the court's view, these are essentially fact-based inquiries regarding whether the IRS has, of a particular date, performed a particular task. As such, unlike many others of plaintiff's admissions requests, these requests require no abstract legal conclusions and are, therefore, appropriate.

### D. Plaintiff's Requests for the Production of Documents

As noted above, on May 30, 2000, plaintiff served its first request for production of documents, which contained 23 separate requests. Defendant objected to these requests and plaintiff responded with a motion to compel responses to 18 of the 23 requests. The court will review these requests *seriatim*, simultaneously focusing on assertions made in plaintiff's motion to compel the production of these documents and defendant's opposition thereto.

### 1. Request No. 1, seeking all notes, case history, memoranda, correspondence, records and documents prepared or obtained in connection with the preparation, issuance or consideration of Rev. Rul. 76–28.

In arguing for production of these materials, plaintiff asserts that "documents relating to the issuance or consideration of Rev. Rul. 76–28 cannot help but provide insight into its purposes and the rationale underlying it." It contends that these materials—essentially the ruling's prepublication package and associated files—are analogous to legislative history and constitute an "evidentiary mosaic" that will demonstrate that its construction of the revenue ruling is consistent with the IRS' own intent in crafting and initially applying the ruling. It contends that the requested materials ultimately will demonstrate that its reliance on the revenue ruling was reasonable and correct. But, left largely unarticulated is just how and why these various contentions are relevant in a case that neither involves the reasonableness of plaintiff's conduct (as might be true in a case involving a penalty) nor a valid attempt to estop the government, but instead presents nothing more than a pure question of statutory construction.[21]

---

**21.** In support of this claim, plaintiff cites *Deluxe Check Printers, Inc. v. United States*, 5 Cl.Ct. 498 (1984), as recognizing "the power secondary documents have to reveal the true meaning of Service written determinations." In fact, in that case, this court refused to allow the plaintiff to discover memoranda and other documents prepared by the Treasury Department or the IRS which allegedly explained the meaning of the statute under review. In so holding, this court stated:

This court cannot sustain plaintiff's contention that internal administrative documents of an executive agency, purporting to explain the meaning or purpose of particular statutory language, have any definitive bearing on the purpose of *Congress* in promulgating such statutory language. Plaintiff refers this court to no authority supportive of this position. To the contrary, it strains credulity to contend that such postenactment documents could reasonably be considered to form any legitimate part of the legislative history to subject statutory provision which may be considered in determining whether the IRS has properly applied the statute.

*Id.* at 500. *See also Groves v. United States*, 533 F.2d 1376, 1380 (5th Cir.1976) (rejecting discov-

Are plaintiff's assertions relevant in this context? If the language of the statute is clear, or Congress' intent is otherwise discernible from the statute's legislative history, then that intent is the sockdolager here—nothing in Rev. Rul. 76–28, let alone the materials underlying it, can prevent this court from applying the law enacted by Congress. Indeed, the foregoing discussion amply demonstrates that even if the revenue ruling clearly indicated that plaintiff was entitled to its claimed deductions, it still would not bind this court if that conclusion was inconsistent with Congress' intent. Accordingly, the reasonableness of plaintiff's reliance on that ruling is truly irrelevant here. Rather, as a threshold matter, Rev. Rul. 76–28 is only relevant in this case if one or more of the Code provisions at issue are susceptible to more than one reasonable construction. In that event, this court would be called upon to choose between plaintiff's interpretation and the defendant's. This choice could be informed by the court's review of Rev. Rul. 76–28, which, under the Federal Circuit's precedent described above, is entitled to some weight. Ordinarily, however, that review would be accomplished simply by reviewing the terms of the ruling. Under this scenario, the prepublication package for the ruling would be relevant only if the IRS pressed an interpretation thereof that seemed inconsistent with the terminology of the ruling and plaintiff could then use the background material to demonstrate that the IRS position was not long-standing and, indeed, was inconsistent with the agency's original interpretation of the ruling.

Accordingly, the files requested by plaintiff will be relevant in this action only in very limited circumstances. And, even in those limited circumstances, various materials in those files undoubtedly will shed no light whatsoever on what the IRS, as an agency, felt the ruling meant or means. Thus, for example, the files could contain memoranda from individual IRS line attorneys setting forth positions that do not represent the agency's formal view of the law, including positions that were rejected by the IRS or the Treasury Department in choosing the final terminology and scope of the ruling. In this regard, plaintiff's attempt to analogize the ruling's background file to a statute's legislative history, in fact, proves informative, but only in sounding a note of caution. Seemingly, just as courts often refuse to attribute to Congress views expressed by a staffer or an individual member of Congress, particularly where such statements are made after the passage of a law,[22] so too should this court be extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency. *See Sidell v. Comm'r*, 225 F.3d 103, 111 (1st Cir.2000) (rejecting the taxpayer's reliance on a number of internal IRS memoranda to show that a proposed regulation was not meant to cover a particular situation); *Armco, Inc. v. Comm'r*, 87 T.C. 865, 867, 1986 WL 22040 (1986) (affidavit of IRS employee explaining his intent in drafting a regulation irrelevant to interpreting the regulation). *See also Honeywell, Inc. v. United States*, 228 Ct.Cl. 591, 661 F.2d 182, 185–86 (1981) (finding subcommittee report not reflective of full committee's intentions in promulgating regulation). Thus, even if, in general, the background file of a revenue ruling might, in highly limited circumstances, be relevant in resolving a question of statutory construction, it remains that the only materials in that file that would figure in this court's decisional calculus are those reflecting some high level of agency approval.

Conceding that some of these materials may be relevant and thus potentially discoverable, it remains to be determined whether any of the relevant materials are privileged.

ery regarding rationale for revenue ruling in case involving question of statutory construction), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976).

**22.** *See, e.g., Southeastern Community College v. Davis*, 442 U.S. 397, 411–12 n. 11, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *City of Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 714, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978); *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493–94, 51 S.Ct. 510, 75 L.Ed. 1183 (1931); *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474, 41 S.Ct. 172, 65 L.Ed. 349 (1921)

Indeed, while defendant invokes a wide range of privileges, two privileges appear particularly applicable to the materials requested.[23] The first again derives from the nondisclosure provisions of section 6103(a) of the Code. Based on this court's conclusion that no exception to this disclosure provision is applicable in the instant case, defendant thus is not obliged to produce any documents containing tax return information, unless that information somehow could be readily redacted.

 The second privilege potentially applicable here is the deliberative process privilege. In *NLRB v. Sears Roebuck Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), the Supreme Court recognized that within the scope of the executive privilege exists a deliberative process privilege that protects documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which the governmental decisions and policies are formulated." *Id.* at 150, 95 S.Ct. 1504 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966), aff'd sub nom. *V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C.Cir.1967), cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)).[24] To qualify for this exception, the information sought must be predecisional, that is, addressing activities "antecedent to the adoption of an agency policy." *Walsky Constr. Co. v. United States*, 20 Cl.Ct. 317, 320 (1990) (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978). *See also Senate of Puerto Rico v. Dep't of Jus-*

*tice*, 823 F.2d 574, 585 (D.C.Cir.1987)). And, it must truly be deliberative, reflecting "the give-and-take of the consultative process," rather than constituting a "body of secret law" used to discharge its regulatory duties and its dealings with the public. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866–67 (D.C.Cir.1980). Notably, this privilege has been held applicable to drafts of revenue rulings and accompanying background materials that predate the issuance of the ruling. *See, e.g., Arthur Andersen & Co. v. Internal Rev. Serv.*, 679 F.2d 254, 259 (D.C.Cir.1982) (deliberative process privilege applicable to ruling file); *Tax Analysts v. Internal Rev. Serv.*, 97 F.Supp.2d 13, 16 (D.D.C.2000) (deliberative process privilege applicable to legal memoranda constituting part of the prepublication package for a revenue ruling).

 Without reviewing copies of the actual materials requested by plaintiff, this court, however, is ill-positioned to determine not only whether any of these materials are privileged, but also whether any of them are even relevant to this proceeding. Moreover, while defendant has generally invoked privileges with respect to these documents, it has not yet specifically met the requirements for claiming the deliberative process privilege, which generally must be invoked by the agency head after actual personal consideration by that officer.[25] Accordingly, this court will order defendant to provide for *in camera* review: (i) a copy of the IRS' prepublication package for Rev. Rul. 76–28,

---

23. Among the other privileges invoked by defendant is the work product privilege. However, the court fails to see how this privilege could be applicable to documents in a prepublication package that clearly were not prepared in anticipation of litigation. *See, e.g., Peterson v. United States*, 52 F.R.D. 317, 320–21 (N.D.Ill.1971). *See generally, Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

24. *See also Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed.Cir.1985) ("The executive privilege ... protects agency officials' deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decision-making process"); *Abramson v. United States*, 39 Fed.Cl. 290, 293 (1997); *CACI Field Serv., Inc. v. United States*, 12 Cl.Ct. 680, 686 (1987), aff'd, 854 F.2d

464 (Fed.Cir.1988). As noted in *Tax Analysts v. Internal Revenue Service*, 152 F.Supp.2d 1, 20 (D.D.C.2001), three policies constitute the basis for this privilege:

> (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against the public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

*See also Coastal States Gas Corp.*, 617 F.2d at 866.

25. *See United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Walsky Constr. Co.*, 20 Cl.Ct. at 320.

and any similar associated files; [26] and (ii) a privilege log for those materials indicating, for each document, whether a privilege is being invoked as to a particular document and what that privilege is. In addition, to the extent defendant seeks to invoke the deliberative process privilege with respect to one or more of these documents, it shall provide a formal invocation of the privilege by the Commissioner of Internal Revenue. *See Scott Paper Co. v. United States*, 943 F.Supp. 501, 502 (E.D.Pa.1996) (allowing government, after a defective invocation of the privilege, a limited additional period of time to properly invoke privilege). Once the court has reviewed these materials, it will determine which, if any, shall be produced to plaintiff.

2. **Request Nos. 2–15, seeking all notes, case histories, memoranda, correspondence, records and documents prepared or obtained in connection with the preparation, issuance or consideration of private letter rulings, technical advice memoranda and General Counsel Memoranda specifically identified therein.**

Plaintiff claims that it needs these documents because they "shed light on the meaning of the [Rev. Rul. 76–28] by demonstrating not only the understanding given it by the Service's team of experts but also how those experts arrived at that understanding." [27] "Such 'expert testimony'," plaintiff continues, "is certain to assist in giving the Ruling its proper construction."

In so arguing, however, plaintiff seizes on the few decisions which have—in this court's view erroneously—cited private letter rulings and technical advice memorandum as evidence of the proper construction of the revenue laws. *See, e.g., Estate of Reddert v. United States*, 925 F.Supp. 261, 267–68 (D.N.J.1996). As discussed above, such decisions ignore, as does plaintiff, both the plain language of section 6110(k)(3) of the Code prohibiting the use or citation of private letter rulings, as well as the rationale underlying that provision. *See Shakespeare Co. v. United States*, 182 Ct.Cl. 119, 389 F.2d 772, 777 (1968).[28] If, consistent with this provision and the prevailing jurisprudence, this court may not consider the substance of such rulings in construing the Code, then it proceeds, *a fortiori*, that internal IRS materials relating to such rulings are also irrelevant to the issues before this court. Moreover, as plaintiff has not indicated that it ever requested a letter ruling with respect to the issue in question, it is in no position to assert

---

26. In responding to this request initially, defendant asserted that no documents are available that are responsive. The court finds it odd, however, that the IRS has not retained the prepublication file and associated files for the revenue ruling. If, however, such is truly the case, in lieu of filing the documents themselves, defendant shall file an appropriate affidavit or declaration indicating that the prepublication files and associated files for the revenue ruling are not available.

27. The documents requested relate to: PLR 7945115, 1979 WL 58525 (Aug. 8, 1979); PLR, 8010123, 1979 WL 57304 (Dec. 17, 1979); PLR 8042133, 1980 WL 135185 (July 25, 1980); PLR 8111082, 1980 WL 138007 (Dec. 18, 1980); PLR 8120170, 1981 WL 170982 (Feb. 24, 1981); PLR 8138076, 1981 WL 172741 (June 25, 1981); PLR 8207051, 1981 WL 175040 (Nov. 19, 1981); PLR 8822104 (March 14, 1988); TAM 8714008, 1986 WL 372897 (Dec. 17, 1986); TAM 8534002 (April 4, 1985); TAM 8227068 (April 9, 1982); TAM 8210014, 1982 WL 211219; and GCM 39677, 1987 WL 430197 (Oct. 30, 1987).

28. In *Shakespeare*, the Court of Claims rejected discovery requests and other determinations made with respect to identified Code section and Treasury regulations. In so ruling, the court indicated:

> We can find nothing in the record before us to indicate either good cause, relevancy, or that the documents sought appear reasonably calculated to lead to the discovery of admissible evidence, as required by the rules.... Nor is there a showing that the documents sought are material to the issues ... We say this in particular because (1) if any letter rulings were contrary to the application of the law, they obviously could not estop the government from correcting them even with respect to the same taxpayer ... and (2) even though a taxpayer receiving a private ruling issued by the National Office of the Internal Revenue Service might be entitled to rely upon it until revoked, no court has held a private ruling binding on the government as against other taxpayers.

*Shakespeare*, 389 F.2d at 777 (citations omitted). *See also Davis v. Comm'r*, 69 T.C. 716, 720–21, 1978 WL 3424 (1978) (discovery request with respect to letter rulings not reasonably calculated to lead to discovery of admissible evidence).

that the requested materials potentially relate to an application of the doctrine in *IBM, supra. See Shakespeare*, 389 F.2d at 777 (*IBM* inapplicable where "plaintiff has not shown that it ever requested a ruling"); *Mars Equipment Corp. v. United States*, 1976 WL 1197, *1 (N.D.Ill.1976) (same). Accordingly, plaintiff has failed to demonstrate that the requested materials are reasonably calculated to lead to the discovery of admissible evidence.[29] Even were that not the case, this court believes that the requests are unduly burdensome and cumbrous, particularly given the likelihood that many of the materials requested would contain tax return information protected by section 6103(a).

For the foregoing reasons, this court concludes that defendant need not respond to these requests for production.

3. **Request Nos. 16–17, seeking all notes, case histories, memoranda, correspondence, records and documents relating to the application of Rev. Rul. 76–28 to the types of pension benefit plans specifically identified therein.**

■ Plaintiff asserts that documents addressing the application of Rev. Rul. 76–28 to contributions to multiemployer and single employer plans "will aid the Plaintiff and the Court in determining whether Rev. Rul. 76–28 is meant to treat multiemployer and single employer defined benefit plans differently in its application of Section 404(a)(6)."

This request, however, is extraordinarily broad—covering not only written determinations, but also informal communications and all associated documents—and necessarily overlaps, and, in many ways restates in different terms, plaintiff's other production requests, among them those which this court has concluded are inappropriate (*e.g.*, 2–15). As the attachments to plaintiff's various motions and memoranda demonstrate, plaintiff, indeed, already possesses a number of these materials, including various rulings and memoranda relating to the application of Rev. Rul. 76–28, as well as portions of the

background files for such rulings and memoranda. To the extent plaintiff seeks additional private letter rulings and technical advice memoranda, the court believes that it is able to obtain such documents through more convenient, as well as less burdensome and expensive means. To the extent plaintiff seeks less formal applications of the revenue ruling, as well as additional background materials, it has not demonstrated that those materials are relevant or likely to lead to the discovery of admissible evidence. *See Shakespeare*, 389 F.2d at 777.

Accordingly, this court finds that defendant need not respond to these requests for production.

4. **Request No. 18, seeking all notes, case histories, memoranda, correspondence, records and documents relating to the application of Section 413(b)(7) of the Code to contributions claimed as deductions under section 404(a)(6) of the Code or under Rev. Rul. 76–28.**

Lastly, plaintiff claims that "[m]aterials relating to the application of [section] 413(B)(7) [of the Code] to deductions reported under [section] 404(a)(6) also will be relevant to show what Rev. Rul. 76–28 does not do." So cast, this request does not differ markedly from the scope of plaintiff's earlier-numbered production requests. To the extent covered by plaintiff's first request, materials on this point may eventually be made available. To the extent covered by plaintiff's other requests, this request is, for similar reasons, inappropriate. Thus, this request is, in one respect, cumulative, and in another, irrelevant. Accordingly, defendant need not respond separately to this request.

### III. Conclusion

While, consistent with *Hickman v. Taylor, supra*, some degree of fishing is anticipated by the Federal discovery rules, those rules do not sanction a party to employ essentially a purse seine that indiscriminately sweeps in

---

29. In the court's view, this same conclusion obtains with respect to plaintiff's requests concern-

ing GCM 39677 (Oct. 30, 1987).

not only relevant catch, but hosts of irrelevant and protected species of information. Indeed, though this ruling is predicated on the particulars stated herein, this court might well have rejected the wide majority of plaintiff's discovery requests based upon the elemental conclusion that, in the context of case that essentially presents a question of law, such discovery is widely disproportionate to plaintiff's needs. See RCFC 26(c). Nonetheless, for the reasons discussed above:

1. For plaintiff's requests for admission numbered 18, 19, 21, 23, 29–36, 38, 41–58, 62–67, 70, 73–77, 81, 91–95, 98–102, 104, 105, 110, and 114, defendant's responses and objections are determined to be sufficient and plaintiff's motion in this regard is denied.

2. Defendant's motion for a protective order is granted in regards to all of plaintiff's second set of requests for admission with the exception of numbers 115, 116, 117, 162, 163, 165, 198, 200, 202 203, 205, 209, 229 and 230.

 a. Defendant shall respond to the following requests: 115, 162, 198, 202, 229, and 230.

 b. A conditional protective order is granted for requests 116, 117, 163, 165, 200, 203, 205 and 209. Should defendant deny request 115, then it shall respond to requests 116 and 117. Should defendant deny request 162, then it shall respond to requests 163, 165 and 209. Should defendant deny request 198, then it shall respond to request 200. Should defendant deny request 202, then it shall respond to requests 203 and 205.

3. By December 21, 2001, defendant shall file, under seal, for *in camera* review— (i) a copy of the IRS' prepublication package for Rev. Rul. 76–28, and any associated files; and (ii) a privilege log for those materials indicating, for each document, whether a privilege is being invoked as to that document and what that privilege is.

4. By December 21, 2001, if defendant intends to invoke the deliberative process privilege as to any of the material in the prepublication package for Rev. Rul, 76–28, it shall file a proper invocation of that privilege signed by the Commissioner of Internal Revenue.

5. Plaintiff's motion to compel responses to its other document production requests is hereby denied.

**IT IS SO ORDERED.**